ARNOLD BLOCK, Appellant, v. UNITED STATES FIDELITY & GUARANTY COMPANY.

Court en Banc, December 30, 1926.

1. **EXTENT OF REVIEW: Transfer from Court of Appeals: Disagreement on One Point.** Notwithstanding the judges of the Court of Appeals unanimously agreed in their decision upon all points in the case except the one point whether the plaintiff in an action on a burglary insurance policy was entitled to recover attorney's fees for defendant's vexatious refusal to make payment, and on that point one judge dissented on the ground that the decision was contrary to a former decision of this court, and thereupon the case was transferred to this court as the Constitution requires, this court will not restrict its consideration of the case to that one point, but will consider the whole case, for all purposes, just as if it had reached this court on direct appeal from the circuit court.

2. **BURGLARY INSURANCE: Removal to Different Place: Waiver: Verbal Assurance.** Notwithstanding the burglary insurance policy declared that "no change in this policy shall be valid unless made by endorsement

duly executed by an officer of the insurer," an authorized representative, by virtue of powers conferred upon him by the company, may have authority to waive such provision and to bind risks verbally; and such authorized representative having such power, and having been notified by the insured of the removal of his stock of goods from the place named in the policy to a different place on the day of the removal, and having thereupon verbally bound the risk at the new location, the insurer became liable to pay the amount of the burglary loss.

3. ———: **General Agent: Power to Waive Provisions of Policy.** A general agent, who signs a policy, renewal certificate and riders attached thereto as the authorized representative of the insurance company, and who is supplied by the company with blank forms of policies, endorsements and riders ready for issuance and delivery when signed by him, and to whom premiums are paid upon policies issued by the company, has authority to waive a change in or forfeiture of the policy, whereby the company becomes bound, notwithstanding contrary provisions in the policy.

4. ———: **Notice of Removal: Telephone Assurance.** Positive testimony that notice of the removal of the insured from the place named in the burglary policy to another place was given by telephone to the company's authorized representative and that in reply assurance was given that the new location would be covered from that day and removal permits would be issued; that this method of giving notice of removals was the usual and established practice and custom in the representative's office, and that it was the duty of the telephone operator to take down such messages and see that they reached the right subaltern in the office, makes a case for the jury on the question whether the notice and assurance were given, and the finding of the jury that they were is conclusive on that issue in the appellate court; and whether the person in the representative's office who undertook to receive the message delivered it to the proper person in the office, or through neglect failed to deliver it, is immaterial, for being an employee and agent of the representative her act was his act.

5. ———: ———: **Waiver: Incurring Expense.** Where an insurance company induces the insured to incur trouble and expense in order to comply with provisions in the policy it waives its right of forfeiture or to refuse payment of loss. Where the resident secretary and inspector of burglary risks of the company visited the place to which the insured had removed his business only a day or two after a burglary, and did so at the request of the company's authorized representative, testimony of the insured that, at that time, the inspector required certain changes in the premises to be made and stated that if they were made "the risk would be all right" and that if they were not made "there would be nothing else for the company to do but to get off of the risk," and that the changes were made in compliance with the requirements, at considerable expense, makes a question for the jury, not only on the issue whether the company had notice of the removal before a second burglary thereafter occurred, but also on the issue whether the inspector required the changes to be made and whether they were made in compliance with the requirements, and a finding by the jury for the insured is a sufficient basis for a holding that the company waived a provision in the policy to the effect that a removal to a new place of business would be equivalent to a forfeiture unless the consent of the company were endorsed on the policy.

6. ———: **Waiver: Cancellation: Return of Premiums.** An insurance company cannot at the same time retain premiums to which it has no right and be heard to insist that the policy has been forfeited. Where the insurance company reserved to itself the right to cancel the policy at any time upon delivery or by registered mail of a cancellation notice, and thereupon to retain a pro-rata earned premium, and the policy had eight months to run at the time of the first burglary and seven months at the time of the

second, and the company did not cancel the policy or offer to return the unearned premium, although it was promptly notified of the first burglary, it waived a forfeiture of the policy, regardless of the time when it learned of the removal of the stock of goods from the place mentioned in the policy to the place where the burglaries occurred, whether before the first burglary or a day or two thereafter.

7. **BURGLARY INSURANCE: Pleading: Reply.** Allegations of performance of the terms of an insurance policy are sufficient to authorize proof of the waiver relied upon, without an express allegation of waiver. Allegations that the insured moved his goods to the place where the burglaries occurred and that the company extended all the provisions of the policy to such place are sufficient to authorize proof of a waiver of the policy provisions relating to removals, and make unnecessary a reply to the company's answer that the change of location was not authorized in the manner required by the policy; and a reply alleging waiver, if filed, is immaterial.

8. ———: **Successive Burglaries: Aggregate Amount Recoverable.** Under the peculiar language of the policy sued on, by which, among other insuring clauses, the company agreed "to indemnify the assured in the amount of $3,000 for all direct loss by the felonious taking of merchandise from within the premises," the insured was entitled to recover the value of the merchandise feloniously taken at two successive burglaries within the term of the one year covered by the policy, neither of which exceeded $3,000, but both of which aggregated a sum in excess of $3,000. The meaning of the policy is that the insured should have protection to the extent of $3,000 for each of several successive burglaries which might occur during the period covered by it. And that is its meaning although it further provided that "any payment to the assured for loss or damage under this policy shall constitute a payment in reduction of the total amount of insurance provided by this policy," since the policy did not provide for a "total amount of insurance" in the event of successive losses arising out of the taking of merchandise, except to limit liability for each such single loss to $3,000, and these words may well refer to other clauses relating to the taking of money and securities, narcotics and articles in show windows in which alone "the total amount of insurance" is limited to specified amounts "during the policy period."

9. ———: ———: ———: **Doubt Resolved against Company.** Where the insurance policy is ambiguous upon the question whether the insurance is for $3,000 for each single burglary or the liability is limited to an aggregate amount of $3,000 for all burglaries occurring during the policy period, and is capable of two meanings, or is fairly susceptible of two different constructions, that meaning and construction most favorable to the insured will be adopted and applied, even though another meaning may have been intended by the company, and that for the reason that the company, and not the insured, is the author of the policy.

10. **INSTRUCTIONS: Numerous and Lengthy.** The number, length and minute detail of instructions given are not reversible error, if they fairly and clearly submit the proper issues of fact to be decided by the jury.

11. ———: **Agency: Scope of Employment: Question of Law.** An instruction submitting the question whether an employee of the authorized representative of the insurance company, in receiving over the telephone a verbal notice of the insured's removal to a different place of business and in stating that removal permits would be issued, was acting in the usual course of business of the representative, while on duty in his office and "within the apparent scope of the employee's duty," does not submit a question of law; and if defendant thinks the phrase is not clear or is likely to be misunderstood, it is its duty to request an instruction more definitely defining it.

**12. INSURANCE: Vexatious Refusal to Pay: Attorney Fees.** Vexatious refusal to pay an insurance policy is not to be deduced from the mere fact that a verdict is against the company. Where the company in good faith denied liability because it had no policy covering burglary from the premises burglarized, and the evidence is conflicting upon the issue whether notice of removal of the merchandise to the place burglarized was given to the company's representative prior to the first burglary and whether such notice and the consequent assurance amounted to waiver of the conditions of the policy relating to removals to these premises, the insured is not entitled to attorney's fees for that burglary. But where the resident secretary and inspector of burglary risks of the company, at the direction of its authorized representative, after the first burglary, visited the place burglarized and therefore knew of the insured's removal thereto, and the company did not cancel the policy or offer to return the premiums, and when a second burglary occurred within a month or two thereafter declined to receive proofs of loss and denied any connection with the risk, the insured is entitled to recover attorney's fees for vexatious refusal to pay the loss occasioned by the second burglary.

**13. ———: ———: Pleading.** Allegations, in the language of the statute (Sec. 6337, R. S. 1919), that "defendant vexatiously refused, and still vexatiously refuses, to pay plaintiff for said loss, in whole or in part," coupled with a prayer "for the sum of $1250 as attorney's fees, which said sum plaintiff states is a reasonable attorney's fee for bringing and prosecuting this suit," are not a statement of a conclusion, but allegations of fact, which sufficiently apprise defendant that its refusal to pay the loss was without reasonable or probable cause or excuse; and particularly are such allegations sufficient after verdict assessing an attorney's fees where they were not previously attacked.

**14. ———: ———: Verdict: No Damages.** Where the instruction specifically told the jury that they must find that the refusal of the insurance company to pay the loss was vexatious before they could allow plaintiff an attorney's fee, a verdict allowing an attorney's fee was an affirmative finding that the refusal to pay was vexatious; and that they returned no verdict for damages, if technical error, was error of which defendant cannot complain. Having found that the refusal was vexatious, the jury may return a verdict both for damages and attorney's fees, but they are not compelled to return a verdict for both.

**15. ———: ———: Verdict for Less Amount than Asked.** The fact that the insured's claim of loss and the amount sued for exceeds the amount of the loss as shown by the proof and determined by the verdict, does not demonstrate that the refusal to pay was not vexatious, where the company placed its refusal on no such ground, but denied its liability in any amount; and particularly so, where the insured testified that, after the burglary, he recovered a part of the stolen goods, and thereupon he voluntarily reduced his claim by their value, which was insignificant in comparison to the total loss, and which represented the difference between the amount sued for and the verdict. Having based its refusal to pay upon a single and definite ground, the company is in no position to claim relief from the statutory penalty for vexatious refusal upon a different ground.

**16. JUDGMENT: Reversal with Directions: Separable Items.** This court, under the statute (Sec. 1514, R. S. 1919), may enter here such judgment as the circuit court ought to have given, or remand the cause with directions to the circuit court to enter a designated judgment. Where in the suit on a burglary insurance policy, covering two separate burglaries, the insured recovered the amount of the loss occasioned by each, together with attorney's fees on each count, the item of attorney's fees on the first count,

being separable from the rest of the judgment and not being sustained by the proof, may be eliminated, and the cause be remanded to the trial court to enter judgment for all the other items included in the verdict.

Corpus Juris-Cyc. References: **Burglary and Theft Insurance,** 9 C. J., Section 5, p. 1096, n. 12; Section 7, p. 1097, n. 28; Section 15, p. 1100, n. 87. **Insurance,** 32 C. J., Section 265, p. 1152, n. 94, 95; Section 583, p. 1328, n. 4; Section 598, p. 1332, n. 47; Section 621, p. 1346, n. 93; Section 624, p. 1348, n. 11; 33 C. J., Section 800, p. 87, n. 76; Section 815, p. 97, n. 28; Section 864, p. 132, n. 49; Section 868, p. 135, n. 69, 70; Section 871, p. 138, n. 2; Section 887, p. 149, n. 72; Section 890, p. 152, n. 24, 26, 27; Section 891, p. 152, n. 32.   **Pleading,** 31 Cyc., p. 256, n. 29, 33; p. 257, n. 37; p. 720, n. 79; p. 727, n. 40.   **Trial,** 38 Cyc., p. 1511, n. 23; p. 1693, n. 55; p. 1694, n. 58.

Transferred from Kansas City Court of Appeals.

REVERSED AND REMANDED (*with directions*).

*J. C. Rosenberger, R. E. Talbert* and *Dupuy G. Warrick* for appellant.

(1) Respondent company contends, for the first time, in its brief filed in this court that the allegations contained in plaintiff's petition as to defendant's vexatious refusal to pay the losses sued for, and on which the case was tried, are the statement of a mere conclusion of the pleader, and hence insufficient to support a recovery of attorney's fees under Sec. 6337, R. S. 1919.   To this contention there are several answers:   (a)   This contention is not open to the company because it made no attack on the petition in the trial court by motion, demurrer or otherwise.   (b)   Also because the allegations of the petition were sufficient, and to hold otherwise would be virtually to nullify this salutary statute.   (c)   Also because the company tried the case in the trial court on the theory that plaintiff's right to recover attorney's fees was properly in issue and it is bound by that theory.   The company permitted the evidence of value of the attorney's fees to go in without objection or exception.   In such case it is well settled that such alleged insufficiency of the petition is deemed cured after verdict, and the party will not be heard, for the first time, on appeal to attack the sufficiency of a general allegation upon which a recovery has been had.   Geninazza v. Auction Co., 252 S. W. 417; Machinery Co. v. Bottling Co., 273 Mo. 142; Simpson v. Wells, 237 S. W. 526; Tebeau v. Ridge, 261 Mo. 547; Lopez v. Hines, 254 S. W. 37; Thomasson v. Mercantile Co., 217 Mo. 485; Wyler v. Ratican, 150 Mo. App. 474; Dieter v. Zbaren, 81 Mo. App. 612; McQuade v. Railroad, 200 Mo. 150; Hecfuss v. Am. Packing Co., 224 S. W. 99.; Dickens v. Wells, 245 S. W. 563.   The petition is in the very language of the statute, and the rule is well settled that it is proper to plead a liability under a statute in the language of the statute.   31 Cyc. 115; Patrick v. Haskell County, 105 Kan. 153; Rock Island Co. v. Printing Co., 71 Ill. App. 636; Jarvis v. Hamilton, 16 Wis. 574; Rosselle v. Klein, 59 N. Y. Supp. 94.   The charge

made by the petition that the company's refusal to pay was "vexatious" was a plea of the ultimate fact, and clearly apprised the defendant that it was called upon to defend the charge that its refusal was without just cause or excuse. To have pointed out how or wherein the company's refusal was in bad faith, would be to require plaintiff to allege matters of evidence, which is never proper. McQuillin's Pleading and Practice, sec. 282; Wilkerson v. McGee, 153 Mo. App. 343; Hillbrant v. Donaldson, 69 Mo. App. 92; Coleman v. Treece, 149 Mo. App. 61; Eagleton v. Kabrich, 66 Mo. App. 231; Stainer v. Mining Co., 166 Fed. 220. The company having tried the case below upon the theory that the good faith of its refusal was in issue, and having tried that issue, it will not be permitted to abandon or repudiate such theory on appeal. Palmer v. Shaw Transfer Co., 209 S. W. 882; Simpson v. Wells, 237 S. W. 528; Machinery Co. v. Bottling Co., 273 Mo. 142; Allen Co. v. Richter, 286 Mo. 691; Nat. Board v. Fry, 237 S. W. 519; Osagera v. Shaff, 240 S. W. 124; Hayes v. Kansas City, 294 Mo. 655; LaCrosse Lbr. Co. v. Powell, 247 S. W. 1022; Harris v. Weber Motor Co., 212 Mo. App. 107. (2) It being admitted by the company that it immediately after the first burglary in question learned that plaintiff had moved from the location described in the policy, and that he was making claim under the policy, instead of asserting a forfeiture of the policy, retained the premium and failed to cancel the policy, thereby acquiescing in the change of location and treated the policy as still in force, and thereby estopped itself from afterward asserting that it had not consented to the removal, and this irrespective of any question of authority of the agents to consent to the removal. McIntyre v. Ins. Co., 131 Mo. App. 92; Rhodus v. Ins. Co., 156 Mo. App. 281; Union Trust Co. v. Ins. Co., 79 Mo. App. 362; Harland v. Ins. Co., 192 Mo. App. 198; Jegglin v. W. O. W., 202 Mo. App. 367; Dyer v. Ins. Co., 244 S. W. 964. (3) It was erroneous to deprive plaintiff of his verdicts for his two losses merely because he stood upon his right to the statutory attorney's fees allowed by the jury, and this for two reasons. (a) Because the evidence warranted the assessment of attorney's fees, and (b) Because if the fact were otherwise, the issues involved in plaintiff's right to recover his losses were entirely separate and distinct from the issue of vexatious refusal to pay, and were separately found by the jury and there was no just reason for depriving plaintiff of his verdicts for the amounts of his losses—verdicts fully approved by the trial court—merely because the trial court disapproved the jury's finding on the independent issue of vexatious refusal to pay.

*R. E. Ball* for respondent.

(1) The errors committed by the lower court in the admission of evidence offered by appellant as well as of instructions asked by him

and given by the court completely justified that court's order granting a new trial, and would logically lead to an affirmance of that order on this appeal.   (a)   Because the motion for a new trial served the point abundantly.   Carnie v. Toll, 281 S. W. 41.   (b)   Because the motion for a new trial preserved all objections to instructions given or refused and the excessiveness of the verdict.   State ex rel. Railroad v. Smith, 172 Mo. 446.   (c)   Because not only was the trial court right in granting a new trial, but Judge TRIMBLE was right in asking the Court of Appeals to certify the cause to this court. State ex rel. Ins. Co. v. Allen, 303 Mo. 608.   (d)   Because the second amended reply seeks really to amend plaintiff's petition by contradicting the same, for it is a suit on a written instrument which does not reach and say itself that it was intended to cover the address on McGee Trafficway, and to have said amended reply discharge a function of an amendment to the petition, which it cannot do.   Moss v. Fitch, 212 Mo. 484; R. S. 1919, secs. 1235, 1237; Crawford v. Spencer, 36 Mo. App. 82; Step v. Livingston, 72 Mo. App. 179; Jackson v. Powell, 110 Mo. App. 252; Hill v. Mining Co., 119 Mo. 9; Mohney v. Reed, 40 Mo. App. 99.   (e)   Because said amended reply seeks for the first time to inject an issue in parol which is made the main issue here, not limited to the petition on which the case is founded, and thus appellant gets a hearing on a cause of action not mentioned in the petition, ignoring the statute in regard to a reply that it shall "consist" and be limited to "the new matter in the answer."  R. S. 1919, sec. 1235.   Moss v. Fitch, 212 Mo. 503.   (2) The court erred in giving at plaintiff's request Instruction 2 because said instruction erroneously assumes, without any proof thereof, that witness Dora L. Hutchinson talked over the phone to some employee of McGee & Sons, agents of defendant, when the witness Hutchinson failed and refused to identify the person with whom she talked as being an employee of McGee & Sons.   (3)   Because the court erred in refusing to give at the conclusion of all the evidence defendant's instruction in the nature of a demurrer to the plaintiff's petition and evidence.   (a)   For the reason that there was no contract at 2433 McGee Street Trafficway. (b)   For the further reason that the court could not make a contract as a matter of law for the parties.   (c)   For the further reason that a reply cannot state anything except what is set up in the answer, and a reply cannot serve the function of an amendment to the plaintiff's petition.   (4)   It is unjust to respondent to construe this policy by examining those parts of the printed matter which, whatever they were intended to mean, have no application, or, as Judge GOODE says, "no relevancy to the question of liability" here.   Casner v. Casualty Co., 116 Mo. App. 354; Michaels v. Fidelity & Cas. Co., 128 Mo. App. 18.   (5)   If the question arising goes to the consideration of the original policy, no agent can waive anything which will

have the effect to give validity to the policy. In such case, there would be no consideration for it. Graham v. Ins. Co., 110 Mo. App. 95; Banks v. Clover Leaf Cas. Co., 207 Mo. App. 357; McKee v. Rudd, 222 Mo. 344.

SEDDON, C.—Action to recover for two burglary losses, alleged to have been suffered by plaintiff, upon an open stock burglary policy issued by defendant for a term beginning on November 20, 1919, and ending one year thereafter, and renewed for another year terminating on November 20, 1921. The petition is cast in two counts, each based upon a separate and distinct burglary loss.

Plaintiff, at the times herein mentioned, was a retail dealer in automobile tires and accessories. On September 5, 1919, he purchased the business and stock of merchandise of one Fritz Meyn, doing business as Lotta Miles Tire Company, at 2305 Grand Avenue in Kansas City, Missouri. The policy sued on was taken out by plaintiff on or about November 20, 1919, through Brown, Mann & Barnum, insurance agents in Kansas City. It is executed on behalf of defendant company by John R. Bland, president, and R. Howard Bland, secretary, and countersigned at Kansas City, Missouri, by Thomas McGee & Son, its authorized representative. On or about March 4, 1920, plaintiff discontinued the use of the trade-name, Lotta Miles Tire Company, and changed the name to Block Tire Company, and a rider, countersigned by "Thomas McGee & Son, Authorized Representative," was issued by defendant reciting: "It is hereby understood and agreed that the name of Assured under this policy is corrected to read as follows: 'Arnold Block, Doing business as Block Tire Company.' " On or about May 7, 1920, plaintiff moved his merchandise and place of business from 2305 Grand Avenue to 2307 Grand Avenue, and a rider dated on that day was issued by defendant, countersigned by "Thomas McGee & Son, Authorized Representative," transferring the policy so as to cover the latter location.

Prior to the expiration of the term of the original policy, one L. S. Davis, doing business as Davis & Company, also an insurance agent in Kansas City, requested of plaintiff the privilege of renewing the burglary policy for another year. Plaintiff testified that "he [Davis] said that he could write my burglary insurance as well as anyone else; that he was an agent of the same company in fact, and could place my insurance with the same company. Q. What company did he refer to or mention? A. United States Fidelity & Guaranty Company. He said that he would like to get the renewal of the policy, that he might make the commission on it. I gave my permission to write the policy." A renewal certificate was thereupon issued by defendant, countersigned at Kansas City by "Thomas McGee & Son, Authorized Agent," continuing said policy in force from November

20, 1920, to November 20, 1921, in consideration of a premium of
$205.50. The renewal certificate was duly delivered to plaintiff by
said L. S. Davis. Plaintiff thereupon paid Davis the amount of the
annual premium, $205.50, which premium, less Davis's commission
for procuring the renewal of the policy, Davis in turn paid to Thomas
McGee & Son, defendant's authorized representative.

On March 15, 1921, about four months after the renewal of the pol-
icy and during the renewal period, plaintiff moved his merchandise
and place of business from 2307 Grand Avenue to 2433 McGee Traffic-
way, at which latter place both burglaries in question occurred. On
the day he moved to the new location, plaintiff instructed his book-
keeper and secretary, Miss Alma Murphy, to notify Mr. Davis of the
removal. Miss Murphy testified that she called Mr. Davis on the tel-
ephone, notified him of the removal, and ''I told him about the
policies, both the fire and burglary, and that I wanted to know if
we would be covered, and he said, 'Yes, at both places and in transit.
Yes, you are covered, you are protected.' '' On the same day, Dav-
is's bookkeeper, Miss Dora Hutchinson, was instructed by Davis to
see that the proper notices of removal were attended to. She testi-
fied: ''I called up the McGee & Sons' office, and said I wanted to
report the removal of the Block Tire Company, and the lady said,
'All right,' and I said, 'Have you a pencil and paper upon which to
make the notation,' and she said she had, and I gave this particular
number here, U. S. F. and G., and I said, 'Remove to 2433 McGee
Trafficway,' and asked would they be covered from today, and she
assured me that they would and that the permits would be issued.''
Witness further testified that the telephone notice of removal to Mc-
Gee & Sons' office was given in pursuance of the usual and customary
practice respecting such removals. Upon receiving assurance from
the person at McGee & Sons' office, Miss Hutchinson made a written
memorandum thereof, which she filed on a spindle in Davis's office
and which was put in evidence at the trial.

One J. C. Horn was an employee of Thomas McGee & Sons, defend-
ant's authorized agents, in charge of the burglary department. He
testified that it was a matter of common occurrence and daily routine
in that office for persons having dealings or business with defendant
company to call on the telephone and give notifications of removals,
or changes of name, or other changed conditions which required
amendments of policies; that it is contemplated, when a policy is is-
sued, that removals may take place, or other conditions may there-
after arise, calling for amendments to the policy; that the person at-
tending the telephone switchboard in the office of McGee & Sons re-
ceives such calls as they come in, and that it is the duty of the switch-
board operator to connect the party calling with the person in the
office of McGee & Sons having charge of the particular department

or kind of insurance involved; that it is the duty of the switchboard operator, when a message is given on the telephone in the absence of the head of the department or the person having charge of the particular item of insurance business, to take down the message and see that the message reaches the right party; and that such were the general instructions given to the switchboard operator. Mr. Horn denied having himself received the message, or notice of removal of plaintiff's business, from Davis's office. Defendant produced as witnesses two women employees of Thomas McGee & Sons, one being a switchboard operator and the other a policy writer in the burglary department, and both testified that they knew nothing about such message having been received and that they did not remember receiving any calls from Davis's office. At least two other women employees in McGee & Sons' office acted as "relief" telephone operators, but defendant produced neither of them as a witness at the trial, nor did defendant account for all the persons in the office who might have answered the telephone at the time. The evidence indicates that there were, at the time, some seven or more individual telephones in the office connecting with the switchboard and that there were some twelve or more persons employed in the office.

Eleven days after plaintiff's removal to 2433 McGee Trafficway, during the night of March 25th or the early morning of March 26, 1921, plaintiff's store was burglarized and automobile tires and tubes of the value of $2131.06 were feloniously taken from within the premises. The burglary was discovered on Sunday morning, March 26th, and on the next day, Monday, March 27th, plaintiff notified Mr. L. S. Davis of his loss. On the same day, or the day following, one W. R. Taylor, defendant's resident secretary and inspector of burglary risks, appeared at plaintiff's store and made an inspection of the premises. According to plaintiff's testimony, Taylor told plaintiff that he would have to make certain changes in the premises in order to make the place more secure. Plaintiff testified: "Mr. Taylor went on further to tell me that if I made these changes the risk would be all right; that if I didn't make these changes there would be nothing else for the company to do but get off the risk." Taylor said nothing to plaintiff about the policy being cancelled or suspended. Plaintiff told Taylor that he would comply with Taylor's requirements, or suggested changes in the premises, which plaintiff immediately did at some substantial expense.

Mr. John H. Crandall, the office manager of Davis & Company, testified that, on the Monday following the burglary, plaintiff notified Davis & Company of his loss. Immediately after receiving that notification, Crandall called the office of Thomas McGee & Sons on the telephone and notified them that there had been a loss under the burglary policy issued to Block Tire Company and was told by McGee

and Sons' office that the matter would be looked after. Shortly afterward, McGee & Sons notified Crandall by telephone that they had no record in their office of the removal of plaintiff's place of business from 2307 Grand Avenue to 2433 McGee Trafficway. Crandall immediately started an inquiry in Davis's office to see what had been done about notifying McGee & Sons of the removal, and, after making an inquiry as to the facts, he went to McGee & Sons' office, where he conferred with Mr. Joseph McGee of that office. Mr. McGee then called Mr. Taylor, the resident secretary of defendant, and Crandall informed him of the circumstances of the loss and the contention of McGee & Sons that they had not been notified of the removal of plaintiff's business, and explained that inquiry in Davis's office had developed the fact that Miss Hutchinson had called McGee & Sons' office and notified them of the removal on March 15, 1921. McGee thereupon told Crandall that Taylor would go out and make an inspection of the premises at 2433 McGee Trafficway. Two or three days after this conversation, McGee & Sons requested Davis & Company to furnish affidavits setting forth the circumstances as to the giving of the notice of removal, in order "to furnish the company [defendant] with the full facts in the matter." Mr. Crandall promptly prepared the affidavits of himself and Miss Hutchinson touching the giving of the removal notice by plaintiff to Davis & Company and by Davis & Company in turn to McGee & Sons, and the consent to such removal given by McGee & Sons over the telephone to Miss Hutchinson on March 15, 1921. These affidavits were transmitted to McGee & Sons by L. S. Davis by letter on April 1, 1921.

Plaintiff, having meanwhile learned from Davis that defendant, or its representatives, McGee & Sons, had raised some question as to the policy covering the premises on McGee Trafficway, himself called at the office of McGee & Sons and was referred to one Julien, defendant's adjuster in charge of burglary claims, but, not finding Julien in at the time, plaintiff left his card with the word that he had called to see Julien. Thereafter, plaintiff received the following letter, dated May 2, 1921, addressed to him at 2307 Grand Avenue and written on defendant's stationery: "As I am advised that you have been in the office to see me regarding the burglary loss of The Block Tire Company, this is to advise you that the company hereby denies liability of this claim, for the reason that they had no policy contract covering the premises where this burglary is alleged to have happened and at the time it happened, and for other good and sufficient reasons. Yours truly, O. W. Julien, Supt. Claim Department." Julien testified, as a witness for defendant, that he had acted in good faith in writing the letter denying plaintiff's claim and that liability was denied because Julien's investigation disclosed that plaintiff "had no policy at the place where he claimed to have had the burglary."

He further testified that, before writing the letter, either himself or his office had checked defendant's records as to whether the policy covered the McGee Trafficway location, but did not recall whether the company's records showed that the policy had been cancelled or whether the company had returned, or offered to return, the unearned premium on the policy, and did not know whether the affidavits transmitted to McGee & Sons by Davis & Company were before him at the time he wrote the letter. He explained that the words "and for other good and sufficient reasons" used in the letter were "just rather an omnibus expression in case the other specified points set out there don't properly cover my denial."

With the matter in this situation, plaintiff's premises were burglarized a second time on the night of May 14th, or the early morning of May 15, 1921, and automobile tires and tubes of the value of $3030.87 were stolen from within the premises. Plaintiff subsequently recovered two tires of the value of $95.20, making his net loss from the second burglary $2935.67. On the next morning, May 16, 1921, plaintiff sent a letter to defendant at its home office in Baltimore, Maryland, and also a letter to Thomas McGee & Sons in Kansas City, notifying them of the second robbery and that "we will look to you to protect us in this matter and request that you send us proof of loss blanks." Defendant, from its home office and through its vice-president, replied by letter dated May 19, 1921, as follows: "Your letter of May 16th received. We are referring this matter to our Kansas City office for investigation. Our representative will call upon you in the near future."

Plaintiff testified that no representative of defendant ever came to see him after the second burglary, nor did defendant send him blanks upon which to make proof of loss. Plaintiff, however, prepared a claim, giving a list, description and value of the stolen merchandise, and took the claim to the office of Thomas McGee & Sons, where he saw Mr. Joseph McGee and Mr. Taylor, defendant's resident secretary. He testified: "They took my claim and looked it over and said, 'We don't want this. We are not on your risk. We have nothing to do with it,' and handed me back the claim." Whereupon, plaintiff left the claim in McGee & Sons' office. Plaintiff testified that defendant never, at any time, gave him notice of cancellation of the policy nor did it refund, or offer to refund, any part of the premium paid by him on said policy. This fact is conceded as true by defendant's witness, Mr. Joseph McGee.

Defendant's witness, Taylor, admitted that, upon learning of the first burglary in March, 1921, he had visited plaintiff's premises at 2433 McGee Trafficway, but stated that he happened to go there "more through curiosity than anything else, on account of them having a loss. What I went there for was curiosity to see how they

316 Mo.—19.

(the burglars) got in.'' He also admitted that he had a conversation at that time with plaintiff, in which he told plaintiff ''in a casual way'' what should have been done by plaintiff to make the premises more secure against burglary. He denied, however, that he went to the McGee Trafficway store as the authorized representative of defendant, or that Joseph McGee of McGee & Sons had asked him to go, or that he said anything to plaintiff about conditions under which the company would ''stay on the risk.''

Joseph McGee, testifying as a witness for defendant, stated that, after being informed by Mr. Crandall of Davis & Company of the first loss, he had asked Taylor ''to go down and inspect it and see what the conditions were and find out if we would have accepted the insurance had the request been made; make an inspection of the premises to see if he would have accepted the business had it been requested,'' and that Taylor said he would make an inspection and came back and reported the result of his inspection to McGee.

The evidence tends to show that Thomas McGee & Sons have been, since November, 1916, the duly appointed and exclusive agents of defendant company in Kansas City; that policies of insurance issued by defendant were written in McGee & Sons' office, which office was supplied by defendant with a supply of blank policies, endorsements and riders for attachment to policies, all of which were ready for issuance and delivery, except for the signature of McGee & Sons; that McGee & Sons procured defendant's customers or policyholders not only through solicitors working on a commission basis out of their own office, but also, to a large extent, through other insurance agents not directly connected with McGee & Sons' office; that L. S. Davis, or Davis & Company, procured a large amount of business for defendant, and that business dealings between defendant's authorized representatives, McGee & Sons, and Davis & Company extended over a long period of time, during which time the premiums on policies of insurance sold through Davis & Company aggregated several thousand dollars; that it was the general practice and custom between these two offices, for Davis & Company to procure the customers, telephone the necessary data or information to McGee & Sons, who, in turn, would write and countersign the policies and turn them over to Davis & Company to be delivered to the customers; that Davis & Company were charged by McGee & Sons with the premiums for such policies, which Davis & Company collected directly from the customers. Explaining the method of business between the two offices, the witness Joseph McGee of McGee & Sons testified: ''We don't consider that as Mr. Block's [plaintiff's] business. We were doing business entirely with L. S. Davis; he was responsible for it. To be ethical, we must look to the other agent; we were doing business through him. We wanted all of Mr. Davis's business that we could

get which was acceptable, not only this business, but any other business that was acceptable, because that's the way we make our living.'' Monthly settlements were made between the two offices, McGee & Sons billing Davis & Company for the premiums upon the policies issued and Davis & Company remitting to McGee & Sons the amount of the premiums collected from customers, less Davis & Company's commissions for procuring the business. The witness Crandall, of Davis & Company, testified that it was the practice and course of business between the two offices, when Davis & Company were notified by any customer that he had changed his business location, for Davis & Company to notify the office of McGee & Sons by telephone of the reported change or removal and the change would be accepted by McGee & Sons from the time of the notice by telephone; that, if upon subsequent inspection of the new premises, the defendant company ''didn't want to stay on the risk,'' McGee & Sons would then notify Davis & Company by telephone or letter that the defendant requested cancellation of the policy and request Davis & Company to procure the cancelled policy from the customer and return the same to McGee & Sons.

Defendant's policy of insurance contained the following general provisions:

''6. *Inspection and Suspension*—An authorized representative of the Insurer shall have the right to inspect the premises at any reasonable time, and to require the Assured to make the premises reasonably secure, and to suspend this insurance until such requirements are complied with to the Insurer's satisfaction; such suspension and subsequent reinstatement shall be by notice in writing.

''7. *Cancellation of Policy*—This policy shall be cancelled (a) upon the receipt by the Insurer of a written request from the Assured, when the Insurer shall be entitled to an earned premium according to the customary short-rate table, or (b) upon the Insurer delivering or sending by registered mail to the Assured at the address given in the Schedule, a Cancellation Notice, when the Insurer shall be entitled to a pro-rata earned premium.''

Two attorneys of the Kansas City bar testified on plaintiff's behalf as to the reasonable value of the services of plaintiff's attorneys in bringing and prosecuting this suit, respecting the claims set forth in each count of the petition. According to their testimony, the value of such services exceeds the amounts allowed by the jury therefore in their verdict.

The trial court submitted to the jury the issues raised on both counts of the petition, and the jury returned a verdict for plaintiff on the first count, based upon the first burglary loss, for $2131.06, with interest thereon, and assessed the sum of $500 as attorney's fees; and the jury also returned a verdict for plaintiff on the second count,

based upon the second burglary loss, for $2936.67, with interest thereon, and assessed the sum of $750 as attorney's fees. Judgment was thereupon entered in the aggregate sum of $6807.15, including attorney's fees. Defendant in due time filed its motion for a new trial. The trial court, being of the opinion that the verdict was excessive to the extent of the attorney's fees assessed under each count of the petition as a penalty, ordered plaintiff to file a *remittitur* of such amounts, or the motion for new trial would be sustained. Plaintiff refused to file the required *remittitur,* whereupon an order *nisi* was entered granting a new trial, from which order plaintiff prosecuted an appeal to the Kansas City Court of Appeals. On May 26, 1924, the Kansas City Court of Appeals filed an opinion, concurred in by all the judges of that court, reversing and remanding the cause with directions to the trial court to reinstate the verdict and enter judgment in favor of plaintiff thereon. Respondent (defendant) filed a motion for rehearing. Subsequently, during the same term, respondent's motion for rehearing was overruled, but one of the judges of that court, deeming the opinion to be contrary to the opinion and decision of this court in the case of Non-Royalty Shoe Co. v. Phoenix Assurance Co., 277 Mo. 399, requested that the cause be certified to this court pursuant to the constitutional requirement, and an order was entered of record certifying and transferring the cause to this court for our determination and ruling.

I.   It is argued by appellant that, inasmuch as our decision in Non-Royalty Shoe Co. v. Phoenix Assurance Co., 277 Mo. 399, deals with but a single proposition pertinent to this case, viz., the allowance of attorney's fees as a penalty for respondent's vexatious refusal to pay the alleged losses, this court is concerned only with **Adjudication of Whole Case.** the conflict, if any there be, between our decision in that case and the decision of the Court of Appeals in the case at bar, bearing upon that single proposition. The basis of appellant's argument is that all of the judges of the Kansas City Court of Appeals concurred in the opinion of that court in the instant case and, while one of the judges requested that the cause be certified to this court because he deemed the opinion to be contrary to our ruling in the Non-Royalty Shoe Company case, we should pass only upon the single question concerning which there may be a conflict between the previous decision of this court and that of the Court of Appeals. Respondent, on the other hand, insists that this case is here for all purposes.

Section 6 of the Amendment of 1884 to Article VI of our State Constitution provides: "When any one of said courts of appeals shall in any cause or proceeding render a decision which any one of the judges therein sitting shall deem contrary to any previous decision

of any one of said courts of appeals, or of the Supreme Court, the said Court of Appeals must, of its own motion, pending the same term and not afterward, certify and transfer said cause or proceeding and the original transcript therein to the Supreme Court, and thereupon the Supreme Court must rehear and determine said cause or proceeding, as in case of jurisdiction obtained by ordinary appellate process.'' The constitutional mandate makes clear our duty thereunder to rehear and determine this case as though our jurisdiction obtained by the process of an ordinary appeal. Such has been our uniform construction of this constitutional provision. [Epstein v. Railroad Co., 250 Mo. 1; State v. Clinkenbeard, 232 Mo. 539; Williams v. Railway Co., 288 Mo. 11; City of Brunswick v. Beneke, 289 Mo. 307.]

II.  Inasmuch as this case is before us for all purposes, and respondent insists that the action of the trial court in granting a new trial can be sustained upon several grounds raised by defendant's motion for a new trial, regardless of the reason assigned by the trial court for its action, we deem it proper to first consider **Demurrer to** whether appellant is entitled to any recovery at all. At **Evidence.** the close of plaintiff's case and again at the conclusion of all the testimony, defendant requested the trial court to instruct the jury that, under the pleadings and the evidence, the plaintiff is not entitled to recover on either count of the petition. The refusal of these peremptory instructions is charged as a ground of error in defendant's motion for a new trial, exceptions having been taken by defendant at the time to the overruling of each of the instructions and duly preserved in the bill of exceptions. If plaintiff made no case, then the trial court properly granted a new trial and all other questions drop out of the case.

Respondent insists that the policy of insurance and the renewal certificate upon which plaintiff seeks recovery do not cover the location at 2433 McGee Trafficway; that respondent had no notice of the removal of the merchandise from 2307 Grand Avenue to 2433 McGee Trafficway prior to the first burglary; that respondent did not consent to the removal and had no opportunity to make an inspection of the new premises; and that no change was made in either the policy or the renewal certificate by endorsement executed by any officer of respondent. The policy provides: ''No change in this policy shall be valid unless made by endorsement duly executed by an officer of the Insurer.''

Appellant, on the other hand, contends that McGee & Sons, respondent's authorized representatives, by virtue of the powers conferred upon them by respondent, had authority to verbally bind risks and waive policy provisions, and having been notified by Davis & Company of plaintiff's removal to the McGee Trafficway location on

the day of the removal and having verbally bound the risk at the new location, respondent is liable. Much is said in the briefs of both parties respecting whether an agency relationship existed between Davis & Company and respondent and respecting the power or authority of Davis & Company to accept the notice of removal and waive the provisions of the policy. We find it unnecessary to discuss or consider those questions. The real questions for our consideration and ruling is whether McGee & Sons, respondent's authorized representatives, had notice of the removal and verbally consented thereto and whether respondent is bound thereby so as to render it liable for appellant's losses. We will, therefore, consider these two questions in their inverse order.

The evidence conclusively shows that McGee & Sons were, at the times here in question, respondent's general agents and authorized representatives in Kansas City. The policy, renewal certificate, and riders attached thereto were all signed by McGee & Sons as authorized representatives of respondent. Respondent supplied McGee & Sons with blank forms of policies, endorsements and riders ready for issuance and delivery upon being signed by McGee & Sons. Premiums collected by Davis & Company upon insurance policies issued by respondent were paid to McGee & Sons. Under this state of facts, whatever may be the rule in other jurisdictions, the rule is well-established in this State that an agent such as McGee & Sons has authority to waive a change in, or forfeiture of, the policy, notwithstanding provisions of the policy to the contrary, and the insurance company is bound thereby. [Thompson v. Traders' Ins. Co., 169 Mo. 12; Nickell v. Phoenix Ins. Co., 144 Mo. 420; Springfield Steam Laundry Co. v. Traders' Ins. Co., 151 Mo. 90; James v. Life Association, 148 Mo. 1; Ward v. Ins. Co., 244 S. W. 959; and United Zinc Co. v. Assurance Corp., 144 Mo. App. 380.]

**Authorized Agent: Waiver.**

The evidence is conflicting as to whether McGee & Sons had notice, prior to the first burglary, of the removal of plaintiff's stock of merchandise to the McGee Trafficway location and whether consent was given by McGee & Sons thereto. The testimony of appellant's witnesses is quite positive that the notice of removal was given by telephone on the day of removal by appellant's bookkeeper to Mr. L. S. Davis of Davis & Company and that, on the same day, Davis & Company's bookkeeper called the office of McGee & Sons by telephone and reported the removal and asked if appellant would be covered from that day and received the assurance that he would and that permits would be issued. The evidence tends to show that this method of giving notice of removals was the usual and established practice and custom existing between the office of Davis & Company and that of McGee & Sons. It also appears from the tes-

**Notice.**

timony of respondent's witness, Horn, who was the manager of the burglary department of McGee & Sons' office, that it was a matter of daily routine for persons having business with that office to call on the telephone and give notice of removals or other changed conditions requiring amendments in policies and that, in the absence of the person having charge of such matters, it was the duty of the telephone operator to take down such messages and see that they reached the right party. While several employees of McGee & Sons' office testified that no such message, or notice of removal, was received from the office of Davis & Company, nevertheless it appears that McGee & Sons had a number of other employees at the time, several of whom at times operated the telephone switchboard, and respondent neither produced them as witnesses at the trial nor accounted for their absence. Whether the person in McGee & Sons' office who undertook to receive the telephone message from Davis & Company delivered the message to the proper person in the office or whether the person who received the telephone message was guilty of neglect of duty in failing to deliver the message to the right party is immaterial, for she was the employee and agent of McGee & Sons and her act was the act of respondent. [Simmons v. Modern Woodmen of America, 188 S. W. (Mo. App.) 932; Woolverton v. Fidelity and Casualty Co., 190 N. Y. 41.] For the purpose of passing upon the demurrers to the evidence, we must accord to the testimony of appellant and his witnesses every reasonable intendment and inference which a jury might draw from all the facts and circumstances of the case. It was for the jury to reconcile the discrepancy and conflict between the evidence of appellant and that of respondent and to determine by their verdict the issue of fact, whether the notice of removal was given to respondent's authorized representatives and consented to by them. The jury by their verdict found that issue for appellant.

Respecting the loss occasioned by the second burglary, there can be no reasonable ground for dispute that respondent had notice of the removal long prior to that loss, for Taylor, respondent's resident secretary and inspector of burglary risks, visited the McGee Trafficway premises only a day or two after the first burglary. Appellant's testimony is to the effect that Taylor required certain

**Changes in Premises.** changes in order to make the premises more secure and then stated that if appellant made those changes "the risk would be all right," but if the changes were not made "there would be nothing else for the company to do but get off the risk." Appellant testified that he complied with the requirements and made the changes at some substantial expense. While the appellant's version of this conversation is denied by Taylor, the fact nevertheless remains that Taylor did visit the premises before the second burglary at the direction of Mr. Joseph McGee of McGee & Sons, and that neither

Taylor nor any other representative of respondent, either at that time
or at any other time, gave notice to appellant of any suspension of
the insurance or cancellation of the policy.     Whether respondent,
through its representative Taylor, ordered appellant to make the re-
quired changes in the premises and whether appellant did make the
changes at substantial expense to himself were likewise issues of fact
for the determination of the jury.   Where the representative of an in-
surance company induces the insured to incur trouble and expense
in order to comply  with provisions of the policy,  the company
waives its right to insist upon a forfeiture and on that ground to re-
fuse payment of the loss.   [Painter v. Ins. Co., 256 S. W. 531; Tins-
ley v. Ins. Co., 199 Mo. App. 693; Shearlock v. Ins. Co., 182 S. W.
89.]

Regardless of the time when respondent first learned of the removal
of the merchandise to the location where the burglaries occurred, it
has never cancelled the policy or offered to return to appellant the
unearned premium.   The policy term had about eight months to
run at the time of the first burglary and over seven
months to run at the end of the second burglary. Re-
spondent, by virtue of a provision of the policy, re-
served to itself the right to cancel the policy at any
time upon delivering or sending by registered mail to the assured a
cancellation notice, whereupon respondent was entitled to retain a
pro-rata earned premium.   Under such conditions, it is the settled
law of this State that the insurer waives a forfeiture of the policy.
In a recent case, Dyer v. American Insurance Co., 244 S. W. 964,
965, the Kansas City Court of Appeals has said: "Under such cir-
cumstances it is held, at least in this State, that defendant is assuming
an inconsistent position by contending that the policy is void and at
the same time retaining premiums to which it has no right if its con-
tention is correct. It is therefore estopped to deny that the policy at
the time of the fire was valid and in full force and effect, or to say
that it has not waived the forfeiture relied upon." To the same ef-
fect are Gold Issue Mining & Milling Co. v. Insurance Co., 267 Mo.
1. c. 604, 605; Jegglin v. Woodmen of the World, 202 Mo. App. 367;
Harland v. Ins. Co., 192 Mo. App. 198; McIntyre v. Ins. Co., 131
Mo. App. 88; and Painter v. Ins. Co., 256 S. W. 531. We conclude
that appellant was entitled to the submission of his case to the jury
upon both counts of the petition and the court *nisi* committed no
error in overruling respondent's peremptory instructions.

**Cancellation:
Return of
Premium.**

III.   Respondent contends that appellant failed to plead in his pe-
tition waiver by the insurer of the policy provisions and of a for-
feiture of the policy because of the removal of the merchandise to a
location not mentioned in the policy.   Both counts of the petition al-

<div style="margin-left:2em">**Pleading Waiver.**</div>

lege that "on March 15, 1921, plaintiff removed his said place of business from the location last aforesaid to the one-story building located at 2433 McGee Trafficway, in Kansas City, Missouri, and moved to the premises last aforesaid his stock, then on hand, of automobile tires, tubes and accessories; and defendant, at plaintiff's request, extended the coverage of said policy to the premises last aforesaid, subject to all terms and provisions of said policy. . . . Plaintiff duly performed and complied with all of the terms and conditions of said policy on his part to be done and performed." The answer is a general denial, together with the defense that, "at no time was there any change in the location of the premises referred to in said policy by any endorsement thereon executed by any officer of the insurer or otherwise." Plaintiff thereupon pleaded waiver of the policy provisions in his reply and respondent now urges that there is an inconsistency between the allegations of the petition and those of the reply.

It has long been the established and well-recognized practice in this State, in suits upon insurance policies, to admit proof of waiver without requiring the waiver relied upon to be alleged in the pleadings, such proof having always been admitted under an allegation of performance of the terms of the policy by the assured. This, upon the theory that, if the terms of the policy have been waived by the conduct and course of business of the insurance company, they no longer constitute any part of the policy and, hence, the general allegation of performance covers all proof that the assured is required to make. [Andrus v. Ins. Assn., 168 Mo. 151; Nickell v. Ins. Co., 144 Mo. 420; McCullough v. Ins. Co., 113 Mo. 606; Makos v. Ins. Co., 234 S. W. 369; Scott v. Ins. Co., 222 S. W. 1047.]

It not being obligatory upon appellant, under our established practice, to plead waiver, the fact that he did plead waiver in his reply is immaterial, and hence there is no conflict or inconsistency between the allegations of the petition and those of the reply.

IV. Respondent strenuously contends that the policy of insurance sued upon limits its liability to the maximum sum of $3,000 during the one-year term of the renewal certificate, regardless of the number of losses sustained by appellant during the policy year. The jury

<div style="margin-left:2em">**Successive Burglaries: Amount Recoverable.**</div>

by their verdict determined appellant's loss to be $2131.06 by reason of the first burglarly, and $2936.67 by reason of the second burglary, making an aggregate loss of $5067.73. Hence, respondent contends that the verdict and judgment *nisi* are clearly excessive and the trial court's order granting a new trial is sustainable upon that ground. Appellant insists that, inasmuch as neither of appellant's losses exceeds the sum of $3,000, respondent is liable under the terms

of its insurance contract for both losses, although the aggregate of the two losses exceeds $3,000. This contention makes necessary our consideration and construction of all provisions of the policy applicable to the point raised. The policy is involved and lengthy and covers some twelve or more printed pages of the record. To quote all the provisions thereof would unduly lengthen our opinion.

It provides that respondent "does hereby agree to *indemnify* the Assured hereinafter designated *in the amount specified in the schedule, For All Direct Loss*:

"Insuring Clause A:

"By the felonious taking of merchandise described in Statement 7 of the Schedule, and furniture and fixtures, from within the premises, by any person or persons who shall have made felonious entry into the premises at any time during the day or night, when the premises are not actually open for the transaction of business  .  .  .  ; and

"Insuring Clause B:

"By the felonious taking of money  .  .  .  and securities  .  .  .  , not in excess of ten per centum of the total amount of insurance under this policy, *but in no event in excess of $500, during the policy period,* from within the assured's safe or vault  .  .  .  .

"General Provisions.  .  .  .

"2.   This policy shall not cover any loss or damage:  .  .  .

"(o)   To narcotics or alcoholic beverages for medicinal purposes in excess of ten per centum of the total amount of insurance under this policy, *but in no event in excess of $500 during the policy period;*

"(p)   To merchandise located in the show windows in the premises, occasioned by any person or persons through the unlawful breaking of such show windows from the outside of the premises, *for more than $200, during the policy period,* subject to a further limit of $25 on any one article of merchandise so contained unless otherwise specifically insured for an excess amount;  .  .  .

"8.   Payment of Loss and Replacements  .  .  .  Any *payment* to the assured for loss or damage under this policy *shall constitute a payment in reduction of the total amount of insurance provided by this policy.*  .  .  .

"Schedule.

"Statement 5.   The insurance granted by this policy and the premium therefor shall apply specifically as follows:  .  .  .

"Section (B).   On money and securities (subject to the limitations specified in Insuring Clause "B") and on merchandise as described in Statement 7 of the Schedule  .  .  .  Insurance, $3,000. Premium, $205.50  .  .  .

"Statement 7.   The merchandise in the premises insured under this policy is fully described as follows:   Auto tires, tubes and accessories.

"Statement 8. The maximum value of all merchandise covered hereby will at no time while this policy is in force exceed $5,000, and minimum value will not exceed $4,000. . . ." (Italics ours.)

A close study and analysis of the policy discloses that the respondent specifically limits its liability by Insuring Clause B for the felonious taking of money and securities from within the assured's safe or vault to ten per centum of the total amount of insurance under said policy, *but in no event in excess of $500, during the policy period,* and by paragraph 2 (o) of the General Provisions for loss or damage to narcotics or alcoholic beverages for medicinal purposes to ten per centum of the total amount of insurance under the policy, *but in no event in excess of $500 during the policy period,* and by paragraph 2 (p) of the General Provisions for the taking of merchandise located in the show windows in the premises to *not more than $200, during the policy period.* It seems clear to us that, by its use of the restrictive words "during the policy period," the respondent had in mind that there might be *successive* losses under the policy and intended by the use of those restrictive words to limit its liability during the term or period of the policy for the taking of money and securities, narcotics and alcoholic beverages, and merchandise located in show windows, to the several amounts specified in the policy, regardless of the number, or the aggregate amount, of such *successive* losses. However, while the policy, in the three instances aforesaid, specifically limits respondent's total liability in case of *successive* losses to certain named amounts "*during the policy period,*" no such words of limitation are used in Insuring Clause A of the policy respecting the taking of merchandise from within the premises and not located in the show windows. On the other hand, the respondent broadly agrees "to *indemnify* the assured in the amount specified in the schedule ($3,000) for *all direct loss* by the felonious taking of merchandise from within the premises." The use of this language might well be taken and construed to mean that respondent will indemnify the assured for all direct loss by reason of each and every *single* taking of such merchandise to the extent of $3,000 (the amount mentioned in the schedule of the policy). If it had been the intention of respondent to limit its liability for *successive* losses caused by the taking of such merchandise to $3,000 *during the policy period,* those italicized words of limitation could easily have been written into the policy, as they were in the three other instances above mentioned. Furthermore, it will readily be observed that the policy provides no method of ascertaining which of *several* such losses shall be paid and in what order they shall be paid, in the event that *several* such losses shall occur before the payment of any of them, and where each such loss is less than $3,000, but the aggregate of all such losses exceeds that amount.

In Anderson v. Aetna Life Insurance Co., 75 N. H. 375, 28 L. R. A. (N. S.) 730, an accident insurance policy provided: "If such injuries shall necessitate a surgical operation within ninety days from the date thereof, the insured shall be paid . . . the sum indicated for such operation in the schedule hereinafter contained, provided always that not more than one amount shall be payable for one or more operations performed as the result of one accident." In construing this provision of the policy, the court said: "The defendants contend that, under this paragraph, they agreed to pay only one of the sums named in the schedule for the different operations; or in other words, for only one if several of the different operations enumerated should be necessary as the result of one accident. If such had been the defendants' purpose in drafting the policy, they could have easily provided that payment should be made for only one operation following an accident. . . . The schedule attached to the policy contains a long list of amounts payable for different operations. The amounts vary according to the nature of the operation; and if payment for only one operation was intended to be promised when several were necessary, it is probable some method would have been provided by which to determine which one of the different amounts should be paid. If the defendants are liable for only one, the policy contains nothing which makes them liable to pay for the amputation of the arm rather than for the reduction of the fracture of the nose or ribs. Which operation should be paid for could be determined only by invoking an arbitrary rule against one of the parties."

A case somewhat analogous to the instant case is Crenshaw v. Insurance Co., 63 Mo. App. 678. There, an accident insurance policy provided for an indemnity for loss of time of ten dollars per week to be paid to assured for a period not exceeding thirty consecutive weeks. The assured had been paid $41.43 as indemnity for loss of time due to a previous accidental injury. He recovered judgment for $300 for loss of time occasioned by a second accidental injury. The insurance company contended that, since the policy was for a term of one year and provided for a total indemnity of $300 for loss of time, the assured should not have been allowed to recover more than $300, less the $41.43 paid him on account of the first accidental injury. In ruling this contention, the court said: "We do not think this the proper construction of the policy. The policy limits the amount of the indemnity for *any one accident.* Otherwise, if the full limit of the amount should be paid for an accident happening soon after obtaining the policy, the assured would be without protection for the balance of the year. *The evident meaning of the policy is that the assured shall have protection for successive accidents,* which may happen to him during the period covered by the policy." (Italics ours.)

But, it is strongly stressed by respondent that the clause of the policy to the effect that "any payment to the Assured for loss or damage under this policy shall constitute a payment in reduction of the total amount of insurance provided by this policy" speaks loudly to the effect that $3,000 is the ultimate liability of the insurer, even in the event of successive losses, and shows unmistakably that such was the intention of the parties to the insurance contract. However, under our view and construction of the policy, the policy *does not provide* for a "total amount of insurance" in the event of *successive* losses arising out of the taking of merchandise from within the premises, except to limit the liability for each such *single* loss to $3,000. Furthermore, this paragraph of the policy may well be held to have reference to the other provisions of the policy, respecting the taking of money and securities, narcotics and alcoholic beverages, and merchandise from show windows, in which three instances alone is the total amount of insurance and the liability of the insurer limited by the language of the policy to specified amounts "during the policy period." To say the most for respondent's contention, the policy is ambiguous as to whether liability is limited to $3,000 for each single loss of the kind here in question or for *all* such losses occurring during the term of the policy. The established rule in this State is that, where the provisions of an insurance policy are capable of two meanings or is fairly susceptible of two different constructions, that meaning and construction most favorable to the assured must be applied, even though another meaning may have been intended by the insurer, for the insurer and not the assured is the author of the instrument. [Cunningham v. Casualty Co., 82 Mo. App. 607; Lemaitre v. Casualty Co., 195 Mo. App. 599; Rieger v. Accident Co., 202 Mo. App. 184; Mathews v. Modern Woodmen, 236 Mo. 326; 1 May on Insurance (4 Ed.) sec. 174.] Under the latter rule, we think the policy must be held to provide for indemnity to the assured to the extent of $3,000 for each *single and separate* loss of the kind here in question, and not to limit the insurer's liability for *successive* losses.

V.  Respondent claims that the order granting a new trial is sustainable because of the erroneous giving of certain of plaintiff's instructions. It is urged that the instructions are numerous and voluminous, and are commentaries on the evidence, misleading and confusing, assume the existence of controverted facts, and submit to the jury issues of law rather than issues of fact. Appellant's instructions are numerous and somewhat lengthy, yet we think they fairly and clearly submit the proper issues of fact to be decided by the jury. By reason of their number and length, no good purpose will be served by quoting them in this opinion. Their number, length and minuteness of detail do not constitute reversible

**Instructions.**

error. [Kidd v. Railway Co., 310 Mo. 40, 274 S. W. 1079; Walter v. Cement Co., 250 S. W. 587; Wolfe v. Payne, 294 Mo. 170.]

As respecting the other grounds of criticism, suffice it to say that we have carefully examined plaintiff's given instructions and find that they are predicated upon the facts in evidence and required the jury to find the existence of those facts. Two of the instructions submitted to the jury the question whether the employee of McGee & Sons, in receiving over the telephone the verbal notice of removal to the McGee Trafficway location and in stating that removal permits would be issued, was acting in the usual course of the business of McGee & Sons, while on duty in their office and "within the apparent scope of said employee's duty, if you so find." It is claimed by respondent that the quoted language used submitted a question of law to the jury. We think the quoted phrase has a well defined and commonly understood meaning. If respondent believed that the meaning of the phrase was not clear and was likely to be misunderstood by the jury, it should have requested an instruction defining the phrase. [Berryman v. Southern Surety Co., 227 S. W. l. c. 101; Browning v. Railway Co., 124 Mo. l. c. 71, 72.]

VI. Do the pleadings and the evidence support the jury's verdict and finding of vexatious refusal to pay each of the losses in question?

**Vexatious Delay.**
In actions against insurance companies, damages and attorney's fees are recoverable by virtue of Section 6337, Revised Statutes 1919, which provides: "In any action against any insurance company to recover the amount of any loss under a policy of . . . burglary . . . insurance, if it appear from the evidence that such company has vexatiously refused to pay such loss, the court or jury may, in addition to the amount thereof and interest, allow the plaintiff damages not to exceed ten per cent on the amount of the loss and a reasonable attorney's fee; and the court shall enter judgment for the aggregate sum found in the verdict."

In discussing the subject of what constitutes a vexatious refusal to pay an insurance loss under the statute, we said in Non-Royalty Shoe Co. v. Assurance Co., 277 Mo. l. c. 422: "We are convinced that a vexatious refusal to pay an insurance loss is not to be deduced from the mere fact that upon suit the verdict is adverse to the defendant. [Patterson v. Insurance Co., 174 Mo. App. 44; Keller v. Insurance Co., 198 Mo. 440.] . . . The defendant is to be allowed to entertain an honest difference of opinion as to its liability, or as to the extent of such liability under the contract of insurance, and to litigate that difference; otherwise, the provision of the statute is obviously so shot through with duress as to be invalid upon any view."

Again, in Aufrichtig v. Insurance Co., 249 S. W. l. c. 917, we said: "It will not do to say that an insurance company, acting in good faith, may not contest either an issue of fact or an issue of law, without subjecting itself to the penalties of the statute."

In a recent decision, State ex rel. Continental Life Insurance Co. v. Allen, 303 Mo. 608, l. c. 620, which involved the issue of waiver of the provisions of an insurance policy by relator's agent, this court, en Banc, said: "Relator, therefore, had the right to litigate the case on the proposition that it had not waived what would otherwise have been a complete defense to plaintiff's suit. An insurance company's right to resist payment upon one of its policies cannot be determined by the facts as found by the jury, but must be determined by the facts as they reasonably appeared to it before the trial. It has the right to refuse payment and to defend a suit with all the weapons at its command, so long as it has reasonable ground to believe its defense is meritorious. It is only when it persists in its refusal to pay the policy after it is aware that it has no meritorious defense that it becomes subject to penalties for vexatious delay."

Respecting respondent's refusal to pay the first loss, the letter, dated May 2, 1921, written by O. W. Julien, superintendent of respondent's claim department, advised appellant "that the company hereby denies liability of this claim, for the reason that they had no policy contract covering the premises where this burglary is alleged to have happened and at the time it happened." Julien testified that the letter was written in good faith. There is a conflict in the evidence touching the issue whether notice of removal was given to respondent's authorized representatives prior to the first loss and whether respondent's assent or permission was given thereto. While that issue was decided by the jury in favor of appellant, we cannot say that the evidence and surrounding circumstances show that respondent's refusal to pay the first loss was wilful and without reasonable cause or excuse, based upon the facts as they may have reasonably appeared to respondent before the trial. We, therefore, conclude that the evidence is not sufficient upon which to support an assessment of attorney's fees for vexatious refusal to pay the first loss, which is the basis of the first count of the petition.

However, the evidence respecting respondent's refusal to pay the second loss is quite different. The evidence is indisputable that respondent knew of the removal of appellant's merchandise to the McGee Trafficway location long prior to the second loss. It is likewise indisputable that respondent's agent, Taylor, visited the new premises only a day or two after the first burglary. Mr. Joseph McGee of McGee & Sons testified that Taylor was instructed by him to inspect the new premises at or about the time respondent was notified of the first loss. It is admitted by respondent's witnesses that the policy of

insurance was never suspended or cancelled and that respondent has never refunded, or offered to refund, to appellant the unearned premium, although less than one-half of the policy period had then transpired.    Appellant gave immediate notice of the second loss by letter to the home office of respondent and to McGee & Sons, its local representatives.    Respondent replied by letter from its home office to the effect that ''we are referring this matter to our Kansas City office for investigation.    Our representative will call upon you in the near future.''    No representative of respondent thereafter called upon appellant.    When appellant personally took his claim to the office of McGee & Sons and tendered it to Mr. Joseph McGee and Mr. Taylor, they handed back the claim with the explanation, '' We don't want this.    We are not on your risk.    We have nothing to do with it.''    Such statement, according to the record, was the only ground or reason given by respondent to appellant, before the trial of this action, for its refusal to pay the second loss.    We find that the evidence is amply sufficient to establish respondent's vexatious refusal to pay the second loss and to support the verdict of the jury in allowing and assessing an attorney's fee under the second count of the petition.

Respondent claims, however, that the petition does not state facts sufficient to support a recovery of either damages or attorney's fee on the ground of vexatious refusal to pay the loss.    Both counts of the petition charge that ''defendant vexatiously refused, and still vexatiously refuses, to pay plaintiff for said loss, in whole or in part.''    The prayer of the second count is for judgment ''for the sum of $3030.87, the amount of said loss, with interest thereon at the rate of six per cent per annum from May 16, 1921, and also for ten per cent of the amount of said loss as damages; also for the sum of $1250 as attorney's fees, which said sum of $1250 plaintiff states is a reasonable attorney's fee for bringing and prosecuting this suit.''

Respondent rests its contention upon Dolph v. Casualty Co., 261 S. W. 330, l. c. 334, wherein Division Two of this court ruled that the evidence and surrounding circumstances were insufficient to warrant an inference that the defendant intended vexatiously to delay payment.    However, the learned writer of that opinion remarked: ''It has several times been held by this court that, in order to warrant the recovery of ten per cent and attorney's fees, as provided in that section, there must be appropriate allegations in the petition showing the facts constituting vexatious delay, and such allegations must be supported by proof.''    After quoting the allegation of the petition (which is similar to that in the instant case), the writer of the opinion further remarked, ''This is not an allegation of fact; it is simply a conclusion.''    In view of the fact that, in the Dolph case, the court went into the matter of the sufficiency of the evidence and ruled that the evidence was insufficient to support a recovery for vexatious re-

fusal, it would seem that there was no occasion for considering the sufficiency of the allegation of the petition. The remarks of the court on the sufficiency of the petition would therefore appear to be somewhat, at least, in the nature of *obiter dicta*.

In Fay v. Insurance Co., 268 Mo. 373, the allegation of the petition with respect to defendant's vexatious refusal to pay the loss is identical with that in the instant case and this division of this court affirmed the judgment *nisi*, which included an assessment of attorney's fees as a penalty for such vexatious refusal. The general allegation of vexatious refusal was there approved, inferentially, at least, for we then said, l. c. 389, 391: "Under our statute, if the plaintiff desires to recover the damages named therein, i. e., the ten per cent on the amount of the loss and the attorney's fees, there must be appropriate allegations in the petition showing that plaintiff claims and is entitled to these damages, and such allegations must be sustained by the proof. . . . It stands to reason that under this statute plaintiff must have in the petition allegations showing that he is entitled to these damages, and these damages become a triable issue in the case. . . . *In the case at bar we rule that the allegation of vexatious delay in payment of the policy may be shown by any competent evidence,* whether such evidence tends to establish the right to recover the policy amount or not." (Italics ours.)

The word "vexatiously," as used in the insurance statute, has been often defined by the decisions of this court, and has come to have an established meaning, viz., without reasonable, or probable, cause or excuse. The allegation of plaintiff's petition is in the exact language of the statute. We think the allegation clearly apprised respondent that it must defend the charge that its refusal to pay the loss was without reasonable, or probable, cause or excuse. Such allegation, in our opinion, is not the statement of a conclusion, but is an allegation of an ultimate fact.

In Stainer v. Land and Mining Co., 166 Fed. 220, 223 (C. C. A., 8th Cir.), an action for malicious prosecution, the court said in the majority opinion: "It seems to us that an allegation of want of probable cause is an allegation of an ultimate fact, a condensed expression which by practice and established usage is made to signify that defendant did not have a reasonable ground to believe that plaintiff was guilty. . . . Accordingly, we conclude that a complaint which by clear averment charges that defendant maliciously and without any probable cause whatever caused plaintiff to be prosecuted states a good cause of action."

Such has been the uniform holding of the appellate courts of this State. [Wilkerson v. McGhee, 153 Mo. App. 343; Hilbrant v. Donaldson, 69 Mo. App. 92; Eagleton v. Kabrich, 66 Mo. App. 231; Walser v. Thies, 56 Mo. 89.] In McQuillin on Missouri Pleading and

316 Mo.—20.

Practice (1892 Ed.), Volume 1, section 282, the rule is stated thus: "No party shall be required to state evidence in his pleading, or to disclose therein the means by which he intends to prove his case. . . . Under our system, it is not proper to state the facts or circumstances by which the ultimate fact relied on is to be proved."

Furthermore, there is nothing in the record to indicate that the petition was attacked by respondent until after verdict. It appears to be the rule that a general averment is sufficient without specifying particular acts, unless objected to by demurrer, motion, or otherwise before or during trial. [Geninazza v. Auction & Storage Co., 252 S. W. 417; Machinery Co. v. Bottling Co., 273 Mo. 142; Tebeau v. Ridge, 261 Mo. 547; Simpson v. Wells, 237 S. W. 520.] We accordingly rule that the allegation of the petition is sufficient to support a verdict for vexatious refusal to pay the loss.

Respondent claims that the failure of the jury to assess ten per cent damages in addition to an attorney's fee is fatal, absent an affirmative finding that the refusal to pay was in fact vexatious. In Non-Royalty Shoe Co. v. Assurance Co., 277 Mo. 399, Division Two of this court held that, while "it is technical error to assess one penalty without the other, the error is in favor of defendant and against plaintiff, and defendant may not complain." But the court also said in the same connection: "Either there should be a general verdict assessing *both* the penalty *and* the attorney's fee, or there should be an affirmative finding that the refusal to pay was in fact vexatious."

In the Aufrichtig case, supra, Graves, J., speaking for this division of this court, said: "The use of the word 'may' leaves a discretion in the jury to award or not award the ten per cent damage and attorney's fees. It has been ruled that: (1) There should be at least a general verdict assessing both the penalty and the attorney's fees; or (2) 'an affirmative finding that the refusal to pay was in fact vexatious.' [Shoe Co. v. Assurance Co., 277 Mo. l. c. 421.] *This the case rules to be technical error, but error against the plaintiff.*" (Italics ours.)

In the instant case, the jury were specifically instructed to find that the refusal of respondent to pay the loss was vexatious before they could allow an attorney's fee. The court also furnished the jury with two forms of verdict, either of which was to be used in the event they found for plaintiff upon the main issue, one providing "if you find a verdict in favor of the plaintiff under the second count of his petition, and *if you also find that defendant's refusal to pay plaintiff's demand* arising from the alleged second robbery *was vexatious,* then your verdict upon this count may be in the following form;" the other form of verdict was to be used if the jury "find that defendant's refusal to pay plaintiff's demand . . . *was not vexatious.*" In returning a verdict allowing and assessing an attorney's fee, the

jury, under the instructions and forms of verdict given them for their guidance, must necessarily have found *affirmatively* that respondent's refusal to pay was vexatious.

In Hayden v. Insurance Co., 221 S. W. (Mo. App.) l. c. 442, it is said: "In the main case the court instructed the jury as to the right of recovery for vexatious delay and for attorney's fees. That issue was properly submitted by the court in connection with its instruction to find for plaintiffs for the amount of the policy, and while the jury allowed no damages for the vexatious delay, it awarded counsel fees in an amount entirely within the testimony offered in the case as to the value of the services to counsel. So that we see no error in the action of the jury in allowing that amount."

Similar verdicts have been upheld by our appellate courts. [Fay v. Insurance Co., 268 Mo. 373; Trembley v. Casualty Co., 243 S. W. 201; Jaggi v. Insurance Co., 191 Mo. App. 384.] We see no reversible error in the verdict returned, for, if there be technical error, the error is in respondent's favor.

Lastly, it is asserted by respondent that appellant's claim of loss for the second burglary and the amount sued for in the second count of his petition exceeds, by a substantial amount, the *quantum* of appellant's proof and the amount of the loss as determined by the jury's verdict. Hence, respondent claims that its refusal to pay the amount claimed and sued for by appellant was not vexatious within a strict construction of the penal statute, inasmuch as a less amount of loss was proved by appellant and found by the jury. Appellant testified that, some time after the second burglary, he recovered two of the stolen tires having a value of $95.20, and thereupon he voluntarily reduced his claim at the trial to that extent. The evidence clearly shows that respondent did not base its refusal to pay this loss upon the ground that appellant's claim was excessive or untrue, or that its liability for both losses is limited to $3,000, but gave as its sole reason for such refusal, "We are not on your risk. We have nothing to do with it." Having based its refusal upon a single, definite ground and having failed to inform appellant that the company deemed his demand inaccurate or excessive, we believe that respondent is in no position to relieve itself of the statutory penalty on the ground (revealed at the trial) that appellant had not theretofore given credit for the recovered tires, the value of which was insignificant in comparison with the total loss. Respondent complains of the admission, over its objections, of certain evidence offered by appellant. If error was committed in the admission of such evidence, we do not believe that it materially affected the merits of the action. [Sec. 1513, R. S. 1919; O'Neill v. Kansas City, 178 Mo. 91.]

VII. Section 1514, Revised Statutes 1919, makes it our duty, in appeals or writs of error, to "examine the record and award a new

trial, reverse or affirm the judgment or decision of the circuit court, or give such judgment as such court ought to have given.'' Under this statute, this court may enter here such judgment as the circuit court ought to have given, or (which accomplishes the same result) we may remand the cause with directions as to the judgment to be given and entered by the circuit court. [Dickson v. Rouse, 80 Mo. 224; State ex rel. v. Walbridge, 153 Mo. l. c. 204; Donnell v. Wright, 199 Mo. l. c. 312.] The item of $500 attorney's fees allowed by the jury as a penalty for vexatious refusal under the first count of the petition is separable from the items of loss and interest and we see no occasion for another trial of the cause, resulting in additional expense and delay.

It is therefore ordered that the order *nisi* granting a new trial be reversed and that the cause be remanded with directions to the circuit court to enter a judgment (as of the date of the original judgment, December 15, 1922) that plaintiff have and recover of and from defendant upon the first count of his petition the sum of $2131.06, with interest thereon amounting to $208.74, making a total and aggregate sum of $2339.80 upon said first count of the petition; and that plaintiff have and recover of and from said defendant upon the second count of his petition the sum of $2935.67, with interest thereon amounting to $280.68, and the further sum of $750, as attorney's fees, making a total and aggregate sum of $3966.35 upon said second count of the petition; thereby making the total and aggregate amount of said judgment upon both counts of the petition the sum of $6306.15, which last named sum plaintiff shall have and recover of defendant, with interest thereon at six per cent per annum from December 15, 1922 until paid, together with the costs in said circuit court. *Lindsay, C.,* concurs.

PER CURIAM:—The foregoing opinion by SEDDON, C., is adopted as the opinion of Court en Banc. All concur, except *Graves, J.,* who concurs in reversing the judgment and remanding the cause, but dissents as to the directions.