NELLIE FAY v. ÆTNA LIFE INSURANCE COM-
PANY, Appellant.

### Division One, July 3, 1916.

1. **ACCIDENT INSURANCE:** Passenger.  If the insured would
   be classified as a passenger in an action against the carrier,
   he should likewise be deemed a passenger under the terms of
   an accident policy, unless it by its terms restricts the con-
   ditions.

2. ——: ——: **On Street Car.** The plaintiff's evidence showed that the insured had gone up the steps and through the station of a street railway company and when the street car stopped at the usual place and before it started he was in the act of stepping upon the steps thereof to become a passenger thereon, but whilst he was on the steps or partially on the steps the conductor closed the door (previously open) and gave the signal for the car to go forward, and it did go forward with the insured clinging to the handhold, one foot on the step, and so continued until he was knocked off by a structure on the side of the track. For defendant there was much evidence to the effect that the insured ran and tried to board a moving car after the door through which passengers were admitted had been closed. *Held,* that the evidence for plaintiff, if true, made the insured a passenger under an accident insurance policy promising double-indemnity if the injuries were sustained "while the insured is a passenger in or on a public conveyance provided by a common carrier for passenger service (including platform, steps or running board of railways or street railway cars)," and the credibility of the testimony was for the jury.

3. ——: ——: **Instruction: As Between Insured and Railway: As Between Insured and Insurance Company.** An instruction which tells the jury that if the insured, "with the intention in good faith to become a passenger, had gone up the steps and through the station before the doors of said car were closed, and before said car had started he was in the act of stepping upon the steps of said car to become a passenger, then he was a passenger on said car," stated the acts necessary to make the insured a passenger as between him and the railway company. And the next clause telling the jury that if the "insured was a passenger as above defined and had actually gotten onto the steps of said car and was standing thereon when he was caused to fall therefrom and to be killed by falling from said steps" then he "was a passenger on said car within the meaning of the terms of said insurance policy," stated the necessary facts to make insured a passenger as between him and the insurance company under an accident policy which promised double indemnity if the injuries were sustained "while the insured is a passenger in or on a public conveyance provided by a common carrier for passenger service," etc. And, so viewed, the two clauses are not contradictory or misleading.

4. ——: **Vexatious Delay: Separate Issue: Evidence Confined to Main Issue.** Under the statute a plaintiff in an action on an insurance policy, if he desires to recover damages for vexatious delay, must have in his petition allegations showing

that he is entitled to those damages, and these allegations then become a triable issue, and being such any evidence that tends to prove that issue is competent, whether such evidence tends to prove the main issue or not; and if there is sufficient evidence to support that issue, plaintiff is entitled to recover separate damages for such vexatious refusal to pay but only when he recovers on the policy. But evidence on that issue cannot be confined to matters and things which would tend to show defendant's liability for the principal sum of the policy.

5. ———: ———: Competent Evidence: After Plea of Release Withdrawn. Defendant, after pleading that the beneficiary had for a valuable consideration released it of all liability on the insurance policy and plaintiff has replied charging that said release was fraudulently obtained and asking for damages and attorney's fees for vexatious delay, cannot avoid the introduction of competent evidence showing the vexatious delay, even if it tends to establish the charge of fraud, by withdrawing its answer and filing another from which all pleas of settlement and release are omitted.

6. ———: ———: ———: Fraudulent Release. Evidence that the defendant insurance company purposely delayed the payment of one half of the insurance policy by fraudulently procuring a release of the other half, is competent evidence on the issue of vexatious delay.

7. ———: ———: ———: Inquiry from Railway Witnesses. In a suit on an accident insurance poli:y for double indemnity on the ground that the insured was a passenger on a street railway c⁻⁻, evidence that defendant went to the railway company to get the facts as to whether the insured was a passenger at the time he fell from the steps of the car in the act of boarding it, and that that company husbanded the witnesses who would testify to facts showing that such relation did not exist, is competent evidence to establish vexatious delay, since, before refusing to pay, defendant should have made a fair investigation and not confined it to such facts as these witnesses might give.

Appeal from Jackson Circuit Court.—*Hon. William C. Thomas*, Judge.

AFFIRMED.

*J. C. Rosenberger, Rollin E. Talbert* and *F. R. Wolfers* for appellant.

(1) By the terms of the policy the relation of passenger and carrier must have existed to entitle

plaintiff to double benefits and the insured, having at imminent risk of his life attempted to board this elevated car after the carrier had closed the door and started the car and after the carrier had thereby signified that no passengers would be accepted, could not thereby make himself a passenger and plaintiff was not entitled to recover. Schepers v. Depot Co., 126 Mo. App. 665; Mathews v. Metropolitan, 156 Mo. App. 715; Anable v. Casualty Co., 73 N. J. L. 320, 74 N. J. L. 686; Wallace v Liability Co., 26 Ont. L. 10; Banta v. Casualty Co., 134 Mo. App. 222; Overbeck v. Insurance Co., 94 Mo. App. 453; Life Ins. Co. v. Vandecar, 86 Fed. 282. (2) Sec. 7086, R. S. 1909, providing penalties against insurance companies in certain cases is highly penal and should be strictly construed. Shoe Co. v. Assurance Co., 178 S. W. 246; Mears Mining Co. v. Casualty Co., 162 Mo. App. 193; Casualty Co. v. Dorrough, 107 Fed. 393; Insurance Co. v. Ford, 131 S. W. 306; Insurance Co. v. Stancell, 127 S. W. (Ark.) 968. (3) By the terms of the statute the company cannot be penalized unless "it appear from the evidence" that the company "vexatiously refused to pay" and the company's refusal, to be "vexatious," must be "without reasonable or probable cause" for making a defense. The production by the company of substantial evidence to sustain its defense was a complete vindication of its good faith. Sec. 7068, R. S. 1909; Blackwell v. Insurance Co., 80 Mo. App. 78; Weston v. Insurance Co., 191 Mo. App. 282; Rogers v. Insurance Co., 157 Mo. App. 671; Shoe Co. v. Assurance Co., 178 S. W. 246; Insurance Co. v. Sheppard, 85 Ga. 764. (4) The statute is aimed at frivolous defenses against just claims and not against companies which resort to the courts to protect themselves from claims against which they may have an honest and substantial defense. Authorities supra. (5) Where there is no evidence entitling plaintiff to recover the insurance or where the evidence

on the merits greatly preponderates in favor of the company, the question of penalties is out of the case, and the trial court should not submit such question to the jury. Shoe Co. v. Assurance Co., 178 S. W. 246; Rogers v. Insurance Co., 157 Mo. App. 671; Weston v. Insurance Co., 191 Mo. App. 282; Insurance Co. v. Sheppard, 85 Ga. 764; Renfro v. Insurance Co., 148 Mo. App. 258; Kahn v. Insurance Co., 187 Mo. App. 219. (6) The whole test of the good faith of the company's refusal is the strength or weakness of its case as presented at the trial and it is erroneous to receive extrinsic and collateral evidence disconnected with the merits, directed solely to the issue of vexatious refusal. This is mere "side-wind evidence" preventing a fair trial. Insurance Co. v. Sheppard, 85 Ga. 764; Waddle v. Insurance Co., 184 Mo. App. 576; and authorities supra. (7) The court by receiving illegal, extrinsic and collateral evidence offered under the guise of proving vexatious refusal to pay frustrated a fair trial and enabled plaintiff to collect insurance to which she was not entitled, and a penalty besides. Insurance Co. v. Sheppard, 85 Ga. 764; and authorities supra. (8) The erroneous reception in evidence of the *ex parte* affidavits contained in the proofs of death, also the abandoned answer and motion of defendant, which were part of the court files, also the plaintiff's release and the circumstances of its execution, and in permitting plaintiff's attorney to make wholesale and unfounded charges of fraud and bad faith created such atmosphere of hostility toward the defendant as to destroy its defense and prevent a fair trial, and was the procuring cause of the verdict in its entirety. The reception of such collateral and extrinsic evidence was a great abuse and perversion of the statute in question and was error. Insurance Co. v. Sheppard, 85 Ga. 764; Waddle v. Insurance Co., 184 Mo. App. 576. (9) It is error to receive in evidence court files in the cause

as evidence of bad faith on the part of .the company. Waddle v. Insurance Co., 184 Mo. App. 576. (10) The withdrawal of the release as a defense by the filing of amended pleadings had no tendency to prove that defendant did not have a good and valid defense, and it was error to receive in evidence said court files for any such·purpose. Authorities above. (11) The court erred in giving Instruction No. 2 for the plaintiff. Anable v. Casualty Co., 73 N. J. L. 320, 74 N. J. L. 686.

*T. J. Madden* and *Bird & Pope* for respondent.

GRAVES, P. J.—Plaintiff is the widow of William H. Fay, deceased. Defendant issued to Fay an accident insurance policy on January 17, 1907. This policy was for $5000 and issued for one year, but was kept in force to the time of Fay's accidental death, January 10, 1912, by annual renewals thereof. The policy provided for accumulations, and by a "rider" or subsequent agreement entered into by the company, at the date of Fay's death the policy would and did amount to $7500.

The policy was payable to plaintiff, and for the accidental death of her husband, she under the terms of the policy as modified by this subsequent agreement or rider of date February 12, 1907, was entitled to $7500. In this policy was a double liability clause, which entitled plaintiff to recover double the amount, if Fay was accidentally killed whilst a passenger "in or on any railway passenger car propelled by mechanical power." This clause as originally found said nothing about a passenger riding upon the steps or platform of a car. The defendant, still bidding for business, in June 1910, broadened this double liability clause of its contract, so that thereafter the policy of Fay had incorporated therein the following:

"Double Indemnities.

"7. If such injuries are sustained by means as aforesaid while the insured is a passenger in or on a public conveyance provided by a common carrier for passenger service (including platform, steps or running-board of railway or street railway cars), . . . the amount to be paid under sections 1, 5 and 6 should be double the sum otherwise payable for such injuries."

So that, in the language of the distinguished counsel for appellant, as found in the brief:

"On January 10, 1912, the date of insured's death, the amount of his policy had increased from $5000 to $7500 through continuous renewal, in case of his death from ordinary accident, and to $15,000 in case the injuries were sustained by him 'while the insured is a passenger in or on a public conveyance provided by a common carrier for passenger service, including platform, steps or running-board of railway or street railway cars.' "

This amendment to the original policy (in insurance language called a "rider") was not found by Mrs. Fay when she came to adjust the matter with defendant. It was not with the policy, but was afterward found in some of Mr. Fay's private papers at his office. Mrs. Fay, through her counsel, settled with defendant for $7500, and gave defendant a receipt in full for all liability, without the knowledge of the existence of this supplemental agreement, or rider of June, 1910, by which the terms of the policy were amended as aforesaid. Shortly after the settlement this rider or amendment to the policy was discovered, and plaintiff demanded of defendant the additional sum of $7500, on the theory that deceased was a passenger upon the steps of a Metropolitan Street Railway car at the time of his accidental death. The defendant declined to pay this additional sum, and the instant suit followed. It should be noted that this

change in the double liability clause, as above indi-
cated, was one being made on policies generally by
defendant, and defendant had full knowledge of this
amendment to the policy, when it settled with Mrs.
Fay for $7500.

The course of the pleadings may be of impor-
tance. Counsel for appellant has thus described the
various steps in the pleadings, before issue was finally
made:

"In her petition (1) plaintiff pleads the provi-
sions of the double-indemnity clause which limits its
benefits to accidental injuries sustained 'while the
insured is a passenger' and alleges (2) that William
H. Fay was accidentally killed by falling from a street
railway car of the Kansas City Elevated Railway
Company 'on which he was a passenger;' (3) alleges
that thereby the company became liable to her for
$15,000 'but said defendant instead of paying to this
plaintiff the sum of $15,000, to which she was entitled,
paid her only the sum of $7500, instead of said full
amount of $15,000.' "

To this petition, defendant pleaded in bar of
plaintiff's action, the settlement and release executed
by her in consideration of $7500, and as a further de-
fense denied that Fay, the insured, was a passenger
on the street car or that the plaintiff was entitled to
any double indemnity or that defendant was in any
way indebted to the plaintiff.

Thereupon plaintiff filed an amended petition
with substantially the same allegations, but adding
the allegation that "defendant has vexatiously re-
fused to pay the additional sum of $7500 to this plain-
tiff," and prays judgment for $7500 and interest, and
also for $750 damages as a penalty for said vexatious
refusal of defendant to pay plaintiff said $7500, and
for the further sum of $2500 as attorney's fees.

To this petition defendant filed its former an-
swer.

Thereupon, plaintiff filed her reply charging in general terms that the release had been obtained by fraud, making free use of the words "fraud" and "fraudulent," but setting forth no facts from which fraud could be inferred. The gist of these allegations is that at the time the company paid Mrs. Fay the $7500 she did not know she was entitled, as she claims, to $15,000, but that "defendant did know this and fraudulently concealed said fact." In her reply, plaintiff also offered to return to the defendant the sum of $7500 received by her, said offer being set forth in the reply as follows:

"The plaintiff here now offers and tenders to said defendant said sum of $7500 alleged as such full satisfaction and discharge of plaintiff's said claim and demand, as set forth in said second amended petition herein, and offers to comply with any order of the court with reference thereto."

Plaintiff did not, however, with her reply making offer of restitution, pay the money into the court or tender it to the defendant, or do anything else to make her offer good.

Accordingly, on September 13, 1912, defendant filed in the court its formal motion in which it accepted plaintiff's offer to rescind the release and to return the $7500 and praying that an order be made requiring plaintiff to make good her offer by paying said $7500 into court, otherwise that her petition be stricken from the files. Defendant's motion last above referred to was overruled by the court on November 9, 1912, and it took a term bill of exceptions.

Later on December 10th, the defendant filed an amended answer in which it formally of record withdrew its plea of settlement and release and narrowed the controversy down to the single issue as to whether or not Fay at the time he was injured was a passenger on the car, and therefore, whether she was entitled to the single indemnity of $7500 already admittedly

paid to plaintiff, or whether she was entitled to a further payment of $7500 by way of the double indemnity.

The company, by this answer, in effect expressed its willingness to litigate with Mrs. Fay her right to recover the additional $7500, notwithstanding defendant had already paid her $7500 in full settlement and although she had executed a release fully discharging the company, so that she was thereby restored to her original cause of action, while at the same time retaining the fruits of the settlement.

But the plaintiff was not to be denied in her charges of fraud; although the release had been withdrawn as a defense by the amended answer and was no longer being pleaded as a defense, plaintiff filed a reply renewing the charge that defendant had procured the release by fraud.

This reply was filed after the trial began and under it and over defendant's objections the court allowed plaintiff to introduce evidence in the effort to support such charges of fraud in the release, although no such issue was properly in the case. The court ruling:

"I think, Mr. Rosenberger, that the character of the testimony referred to, would be admissible under the reply which was filed in this case."

And in arguing for the reception of this class of evidence plaintiff's counsel said:

"The object and purpose of this testimony is to show the vexatious conduct of this defendant in refusing to pay this woman's claim."

"Fruitless objections were made throughout by defendant to the reception of this class of evidence and proper exceptions saved."

We quote the foregoing, because it is a short and concise statement of the steps taken to get this case to an issue. The argumentative part of the statement as to the substance of the allegations of fraud, need

not be strictly taken. On this the reply will best speak. Plaintiff obtained the following verdict:

"We the undersigned jurors, find the issues in favor of the plaintiff and assess the amount of her recovery under said policy the sum of $7500 and $337.50 interest, and also assess the amount of $1250 as attorneys' fees." (Here follow the signatures of ten jurors.)

From a judgment entered upon such verdict, the defendant has appealed.

I. Defendant first insists upon its demurrer to the testimony, as we gather the contentions made. As the issues were finally made, the sole question on the merits of the case was whether or not the deceased was a passenger upon the street car at the time of the fatal accident. This question turns upon the facts.

Passenger.

The sole question of fact was whether or not the deceased was boarding a street car before the car started, and whilst the door was yet open for the admission of passengers. The evidence for plaintiff tended to show that the car stopped at the usual place for the passengers to alight from such car, and to get on said car. That whilst the car was in this position, the deceased attempted to enter such car, but whilst he was on the step or partially on the step, the conductor closed the door (previously standing open) and gave the signal for the car to go forward, and it did go forward, with deceased clinging to the handholds, with foot on step, until he was knocked to the street below by a structure on the side of the tracks. This structure was not far from where the car stopped and started. It was an elevated railroad passing over the street. For defendant there was much evidence to the effect that deceased ran and tried to board a moving car, after the door through which passengers were admitted had been closed. The evi-

dence for plaintiff made him a passenger, whilst that for the defendant did not. Much stress is placed upon the character of the two witnesses upon which the plaintiff relied to prove that deceased had done the things required by the law to make him a passenger. Likewise counsel for plaintiff attacks some of the evidence for the defendant. The weight and credibility of this evidence was for the jury, and they have determined it against the defendant. The matter was submitted on the following instruction:

"If the jury believe and find from the evidence that on January 10, 1912, the Kansas City Elevated Railway Company was a carrier of passengers for hire and used the railroad and car mentioned in the evidence for such purpose, and if you further find and believe from the evidence that on said day the employees of said Kansas City Elevated Railway Company in charge thereof stopped said car at or near a point where the tracks of said railway company cross the State line between the States of Missouri and Kansas for the purpose of receiving passengers, and if you further find that William H. Fay, with the intention in good faith to become a passenger (if you so find) had gone up the steps and through the station at said State line and before the doors of said car were closed, and before said car had started, he was in the act of stepping upon the steps of said car to become a passenger thereon, then the court instructs you that said Fay was a passenger on said car. And if you further find and believe from the evidence that said Fay was a passenger as above defined and had actually gotten onto the steps of said car and was standing thereon when he was caused to fall therefrom and to be killed by falling from the said steps of said car at said point to the street below (if you so find), then said Fay was a passenger on said car within the meaning of the terms of said insurance policy and the additional benefit indorse-

ment extending the benefits under said policy, and which are in evidence in this case. And if the jury further believe and find from the evidence that said Fay was caused to be so injured and he died as a direct result of said injuries, if any, received at said time and place, then the plaintiff is entitled to recover. And you are further instructed if you find for the plaintiff you will find for her in the sum of $7500, together with interest thereon at the rate of six per cent per annum from the date of demand of payment, if any, as shown by the evidence. And if you further believe and find from the evidence that defendant has vexatiously, that is, without reasonable cause, refused to pay such amount or loss, then you may, in addition to the above amount and interest, allow the plaintiff damages not to exceed ten per cent on the above amount, and a reasonable attorney's fee, but the amount which you may allow plaintiff, if any, for such attorney's fee must not in any case exceed the sum of $2500.''

In so far as this instruction undertakes to outline the facts necessary to make deceased a passenger, it is correct. If, as a fact, the car was standing still, with its door open for the admission of passengers, and whilst it was so standing the deceased started to enter the same, with the intent to ride thereon as a passenger, he was a passenger within the eyes of the law, although the employee of the railway closed the door upon him before he had fully entered such car. The stopping of the car and the opening of the door, was an invitation by the company to deceased to become a passenger, and when he (if he did) attempted to board such car whilst it was yet standing with door ajar, for the purpose of riding thereon, he, at that moment, became a passenger. [6 Cyc. 539.]

The word ''passenger'' in the policy has the ordinary accepted meaning. In other words if the de-

ceased would be classified as a passenger in an action against the carrier, he should likewise be deemed a passenger under the terms of an accident insurance policy, unless the terms of the policy added some conditions. This policy required such passenger to at least be on the steps of the car.

We shall not further follow the counsel upon either side in their assault upon witnesses. The jury weighed the testimony of these witnesses. It was shown that deceased had been crippled a few days before the fatal accident, and had to use a cane in walking. This cane was found near him when picked up after the accident. The jury were evidently loth to believe that a cripple had run and caught hold of a moving car in an attempt to ride.

The question of passenger or no passenger was fairly submitted for determination by the jury and their verdict is conclusive here upon that question.

II. This instruction supra given for plaintiff is criticized by counsel for appellant thus:

"This instruction was self-contradictory and misleading. It first erroneously told the jury that Fay was a passenger on this car if with the intention to *Instruction.* become a passenger he approached the car and was in the act of stepping on the steps of said car, intending to become a passenger thereon. This was erroneous. By the terms of the policy plaintiff could not recover in this case unless the injuries were sustained 'while the insured is a passenger in or on a public conveyance' (see policy). In other words, by the terms of the contract it was essential that Fay should not only be a passenger, but that he should be either in or on the car. Neither his presence at the station nor the fact that he was in the act of stepping on the steps of the car made him a passenger on the car. His mere intention to get on the car was not equivalent to his being

on the car.   His actual presence on the car as a pas-
senger was essential to a right of recovery.   In the
next sentence the court tells the jury that if they find
that Fay was a passenger 'as above defined' and had
actually gotten on to the steps of the car, then insured
was a passenger and plaintiff was entitled to recover.
In other words, the court first told the jury that Fay
was a passenger on the car if he was in the act of
stepping upon it, which was erroneous, and the court
then tells the jury that if he was in the act of stepping
on the car and had actually gotten upon the step, then
he was a passenger and to find for the plaintiff, and
this latter, regardless of whether the car by that time
had been started, its door was closed or not.   The
jury could very well have understood from this in-
struction that the plaintiff had the right to recover
if Fay was in the act of getting on the car, even
though he had not in fact gotten on it.

"We submit that the court tried this case upon
a wholly erroneous theory in admitting affirmative
and independent evidence of vexatious refusal to pay;
that in no event should that fatally prejudicial evi-
dence have been admitted as part of the plaintiff's
case in chief; that the evidence abundantly justified
the defendant in contesting this claim, and therefore
the court was not warranted in even submitting the
question of vexatious refusal to the jury; that the
court erred in refusing to withdraw that issue from
the jury; that the errors committed permeated the
whole trial and inhere in the verdict itself—not
merely with respect to attorneys' fees, but with re-
spect to the whole verdict.

"The judgment should accordingly be reversed."

It does not appear that defendant could have
been harmed by this instruction, because the instruc-
tion requires the jury to find that deceased "had actu-
ally gotten on the steps of said car and was standing

thereon when he was caused to fall" before the jury could find for the plaintiff.

The writer of the instruction evidently had in mind what acts were necessary to make deceased a passenger, as between him and the railroad company, and thus the first clause of the instruction. Technically as between deceased and the railway, he was a .passenger, whether he got on the steps or not, provided the other assumed facts were true. But as the policy required the passenger to be "in or on the car," the writer added the clause, last quoted above which required the jury to find that this technical passenger, was actually on the car, as required by the policy. There is no substance in the complaint, and this contention of appellant is not sustained.

III. The most vehemently argued error in this record is thus stated in the conclusion of counsel's able written argument in the brief. The contention is

Vexatious Delay.

that, under section 7068, Revised Statutes 1909, the plaintiff should not be allowed to introduce evidence as tending to show vexatious refusal to pay a policy of insurance, unless such evidence was necessary and proper for the purpose of establishing plaintiff's right to recover under the policy itself. To couch the question in counsel's language we quote the brief thus:

"The whole test of the good faith of the company's refusal is the strength or weakness of its case as presented at the trial and it is erroneous to receive extrinsic and collateral evidence disconnected with the merits, directed solely to the issue of vexatious refusal. This is mere 'side-wind evidence' preventing a fair trial."

The statute reads:

"In any action against any insurance company to recover the amount of any loss under a policy of fire, life, marine or other insurance, if it appear from the

evidence that such company has vexatiously refused to pay such loss, the court or jury may, in addition to the amount thereof and interest, allow the plaintiff damages not exceeding ten per cent, on the amount of the loss and a reasonable attorney's fee; and the court shall enter judgmnt for the aggregate sum found in the verdict.''

Whilst there may be some authority from other states, under statutes of those states, which would lend some support to appellant's contention, our statute cannot be so construed. Under our statute, if the plaintiff desires to recover the damages named therein, i. e. the ten per cent on the amount of the loss and the attorney's fees, there must be appropriate allegations in the petition showing that plaintiff claims and is entitled to these damages, and such allegations must be sustained by the proof.

Numerous things done by the defendant might be evidence of a vexatious refusal to pay, and yet not have any bearing upon the right of plaintiff to recover on the policy. Thus in Young v. Insurance Co., 187 S. W. 856, we held that the threat to litigate through the Supreme Court, if a settlement offered was not accepted, tended to show a spirit of vexatious delay. This threat did not prove plaintiff's case, but it did prove an intent to vexatiously delay payment. But we need not mention instances. It stands to reason that under this statute plaintiffs must have in the petition allegations showing that he is entitled to these damages, and these damages become a triable issue in the case. As it is a triable issue, any evidence which tends to prove this particular issue is competent, whether such evidence tends to prove the main issue in the case or not. By main issue we mean the plaintiff's right to recover under the policy.

Of course if this issue as to these statutory damages is not made out by proof, it is the duty of the court, as in other cases, to take such issue from the

jury by appropriate instruction. But if there is evidence by proof direct of vexatious refusal to pay, or if from all the evidence, facts and circumstances in the case, the jury has the right to infer a vexatious refusal to pay, then the issue should be submitted to the jury. The statute leaves the jury as the arbiter, if there are facts sufficient to carry the issue of vexatious delay to the jury. Nor could the plaintiff be precluded from introducing any competent evidence tending to show a vexatious delay in payment. Such plaintiff is not confined, upon this issue, merely to matters and things which would tend to show defendant's liability, for the principal sum of the policy, but he may offer any competent evidence upon this one issue, whether such evidence supports the main issue of liability on the policy or not. Certainly there can be no recovery upon the issue of vexatious delay, if there is no recovery under the policy, but if there is recovery on the policy then there may be a recovery of these statutory damages, if the jury so find, under evidence sufficient to support their verdict upon that issue.

This particular question, i. e., whether extrinsic evidence is admissible to sustain the allegation of vexatious delay, is one of first impression in this State. The statute has been frequently under review, but not from this angle. In the very early case of Brown v. Insurance Co., 45 Mo. l. c. 227, we said:

"The whole question of vexatious refusal or delay is a matter of fact to be determined by the jury. They must make up their verdict on this issue by a general survey of all the facts and circumstances in the case; and if, upon a full consideration, they conclude that the refusal was unjustifiable and vexatious, the law authorizes them to assess the damages. The statute will not admit of the construction contended for by the counsel for the plaintiff in error, that before damages are allowed it must be explicitly proved

by the plaintiff that the delay or refusal was vexatious.''

And this doctrine has the later express approval of this court in Keller v. Insurance Co., 198 Mo. 440. In the Brown case there was no extrinsic proof on the question of vexatious delay, as we gather it from the opinion, but Judge WAGNER did not by the language used undertake the rule that proof on the question of vexatious delay must be limited to proof tending to show the right of plaintiff to recover upon the merits. It is there simply ruled that the jury should determine this question from the facts and circumstances in the case.

In that case there was a wholly untenable defense made upon the question of the validity of the policy, and it was evidently upon this matter that the court ruled there was sufficient evidence to submit the question to the jury.

In the case at bar we rule that the allegation of vexatious delay in payment of the policy may be shown by any competent evidence, whether such evidence tends to establish the right to recover the policy amount or not. This leaves but one question of serious import left, and that is the competency of the evidence offered in the trial upon the issue. That question we take next.

IV. Recalling the statement of facts it will appear that defendant first pleaded settlement, to which plea plaintiff replied by alleging such settlement was fraudulently procured, and tendering in the reply the $7500 received in settlement. Later the defendant moved the court to compel plaintiff to pay into court the $7500 upon a return of the receipts taken in settlement. This motion was overruled, and the defendants so framed their answer as to obviate the question of fraud in the release, if they could obviate

Vexatious
Delay:
Competent
Evidence.

that issue.  In this last answer they did not plead settlement, but denied liability.  The plaintiff proved these pleadings on the theory that they tended to show a vexatious delay in payment.  We think this evidence competent.  It will not do to say that defendant magnanimously withdrew the issue of settlement merely to save plaintiff the trouble of trying to prove fraud in the execution of the releases.  We use the term "releases" instead of "release" purposely, because when plaintiff brought in her policy and released all claims upon it for the $7500 she was asked about the annual renewals issued by the company, and she not having them, they took a further release as to them.  The officer of the company also said that they had in mind the last rider pertaining to double liability when this settlement was made.  The jury were entitled to all these facts.  They might conclude that the issue of fraud in the settlement was skillfully withdrawn by defendant's last answer to obviate a trial of an issue, which defendant feared in the case.  The jury might reasonably conclude that this was but another link in the chain of vexatious delay.

Not only was this evidence proper, but if plaintiff could show that the defendant purposely delayed the payment of the last $7500, by fraudulently procuring the release, that evidence would also be proper upon the issue of vexatious delay.  In Young v. Insurance Co., supra, we held that the fact that a fraudulent appraisement had been procured by defendant was a proper matter to be considered upon the issue of vexatious delay.  So in this case the procuring of a fraudulent release (if such was done) for less than the full liability of defendant was a proper circumstance to be shown upon the issue of vexatious delay, and this is none the less true, because the showing of such fact might tend to prejudice the jury upon the main issue.  If, as a fact, a fraudulent release was procured, it was the act of the defendant, and

defendant should be estopped from saying that proof of its wrong-doing would prejudice the jury, if such proof is competent upon any issue in the case.

Plaintiff also showed that defendant went to the railway company to get the facts as to whether or not the deceased was a passenger, and that the railway company usually husbanded the witnesses who would testify to facts showing that such relation did not exist between it and deceased, and that defendant's agent making the investigation knew that such was the course of conduct upon the part of the railway company. We see no error in this evidence. Before refusing to pay on the ground that deceased was not a passenger, the defendant should have made a fair investigation of the facts. It should not have confined its investigation, as it seemingly did, to such facts as might have been given it by the railway company, which was vitally interested in the fact whether or not deceased was a passenger. Whether the railway was in the habit of getting one side of the controversy in such case, if such was a fact, and defendant's knew of this habit, was certainly competent. Other points are raised, all of which we have examined, but the foregoing are all that we deem worthy of note in the opinion. We believe that there were facts sufficient to carry the issue of vexatious delay in payment to the jury, and its finding thereon is binding here. The judgment should be and is affirmed. All concur; *Bond, J.,* in result.