The WESTERN CASUALTY AND SURE-
TY COMPANY, a Corporation,
Appellant,

v.

SOUTHWESTERN BELL TELEPHONE
COMPANY, a Corporation, Appellee.

No. 18967.

United States Court of Appeals
Eighth Circuit.

June 14, 1968.

Rehearing Denied July 19, 1968.

Rene J. Lusser, of Lusser, Hughes & Lusser, St. Louis, Mo., for appellant. Rene E. Lusser was on the brief and reply brief with Rene J. Lusser, St. Louis, Mo.

John D. Rahoy, St. Louis, Mo., for appellee. John Mohler, was on the brief with John D. Rahoy, St. Louis, Mo.

Before MEHAFFY, GIBSON and HEANEY, Circuit Judges.

MEHAFFY, Circuit Judge.

Southwestern Bell Telephone Company brought a declaratory judgment action against The Western Casualty and Surety Company, seeking a determination that Western was liable under an owner's protective liability insurance policy issued to Bell. The case was tried to the United States district court upon a partial stipulation of facts, certain exhibits and testimony of witnesses, and the court found in a memorandum opinion reported at 269 F.Supp. 315 (E.D. Mo.1967) that coverage existed, and further that Western must pay reasonable attorneys' fees for the prosecution of the instant suit. We affirm the judgment of the district court holding existence of insurance coverage, but mod-ify the judgment wherein allowance is made for attorneys' fees in the instant case for reasons hereinafter set out.

■ Diversity of citizenship and the requisite amount in controversy establish jurisdiction. The substantive law of Missouri controls the construction of the insurance contract. City of Poplar Bluff v. New Amsterdam Cas. Co., 386 F.2d 172, 173 (8th Cir. 1967).

The district court's memorandum opinion fully sets out the facts which we summarize as follows. Bell contracted with Missouri Conduit and Construction Company to enlarge several of its manholes in St. Louis, Missouri. Missouri Conduit was an independent contractor, but the work was to be performed in accordance with plans and specifications furnished by Bell. Missouri Conduit was also required to obtain an owner's protective liability insurance policy in Bell's name covering the operations under the contract with the insurance company which had Missouri Conduit's coverage.

Bell furnished Missouri Conduit several plats of other public utility facilities in the area, but these plats did not indicate an underground power cable which had been installed near or adjacent to the south wall of one of Bell's manholes. Bell had knowledge of this power cable and its location but this information was never given to Missouri Conduit. During the course of the work, one of Missouri Conduit's employees, while using an air hammer, hit the underground energized power cable causing serious bodily injuries to several of Missouri Conduit's employees. Three of these employees brought suits alleging their injuries were caused by Bell's negligence, asserting, *inter alia*, that Bell was negligent in failing to warn plaintiffs of the presence and location of the power cable. When suit was instituted by one of the employees, Bell notified Western of this claim and others and requested Western under the terms of the policy to defend the actions and to pay any and all judgments which might be rendered against Bell. Western, however, disclaimed li-

ability under the terms of the policy, whereupon Bell brought the instant declaratory judgment action.

By this appeal, Western assigns as error: (1) the asserted misconstruction by the district court of the insurance contract in determining the existence of coverage; (2) the district court's ruling that Western could not complain about the manner in which Bell handled the defense of the lawsuits or any settlements that might be made; and (3) the award to Bell of recovery of expenses and attorneys' fees.

The pertinent provisions of the policy involved are:

## "INSURING AGREEMENTS

"I. Coverage A—Bodily Injury Liability. To pay on behalf of the insured all sums which the insured shall become legally obligated to pay as damages because of bodily injury, sickness or disease, including death at any time resulting therefrom, sustained by any person, caused by accident and arising out of the hazards hereinafter defined.

\* \* \* \* \* \*

## "DEFINITION OF HAZARDS

"Division 3—Independent Contractors. Operations performed for the named insured by independent contractors and general supervision thereof by the named insured, if the accident occurs in the course of such, operations, other than (a) maintenance and repairs at premises owned by or rented to the named insured and (b) structural alterations at such premises which do not involve changing the size of or moving buildings or other structures.

\* \* \* \* \* \*

## "EXCLUSIONS

"This policy does not apply:

\* \* \* \* \* \*

"(e) under Division 3 of the Definition of Hazards, to any act or omission of the named insured or any of his employees, other than general supervision of work performed for the named insured by independent contractors;

\* \* \* \* \* \*

## "AMENDING ENDORSEMENT

"It is agreed that the words 'and caused by accident' appearing in Insuring Agreement I, Coverage A—Bodily Injury Liability—are deleted, and as respects bodily injury liability only, wherever in the policy the word 'accident' appears, the word 'occurrence' shall be substituted therefor.

\* \* \* \* \* \*

## "ENDORSEMENT

\* \* \* \* \* \*

"1. Coverage under this policy is limited to operations performed for the named insured by *Missouri Conduit and Construction Company, Incorporated.*"

The above policy affords coverage to Bell, the named insured, by reason of containment of language in Division 3 thereof, insuring against accidents arising out of operations performed under "general supervision thereof by the named insured." This conclusion on our part makes it unnecessary to discuss other arguments concerning the policy provisions.

■ As noted by the district court, the term "general supervision" as contained in the policy contract is not defined by the policy, nor by cases cited or by custom. Under the general rules of construction of insurance contracts, the term presents an uncertainty and ambiguity as to its meaning, which under settled Missouri law must be construed in favor of the insured. City of Poplar Bluff v. New Amsterdam Cas. Co., supra; Campbell v. American Farmers Mut. Ins. Co., 238 F.2d 284 (8th Cir. 1956); Union Electric Co. v. Pacific Indem. Co., 422 S.W.2d 87 (Mo.App.1967). The district court's opinion here as to meaning of the term "general supervision" is strengthened by the recent St. Louis Court of Appeals opinion in Union Electric Co. v. Pacific Indem. Co., supra.

Absent an opinion of the Missouri Supreme Court, we give strong consideration to the opinion of the appeals court in the *Union Electric* case.[1] There, the Missouri court construed a substantially identical policy provision under a factual situation strikingly similar to the one before us. Union Electric executed a contract with Davey Tree Expert Company, an independent contractor, which provided that Davey was to cut and trim trees designated by Union Electric's authorized representative along Union Electric's distribution and transmission lines. While performing this work, one of Davey's employees allowed his pruning shears to come into contact with an uninsulated wire and was severely burned. None of Union Electric's employees was present, but it was Union Electric's contractual responsibility to check Davey's work to see that Union Electric was getting the best work for the least money. There was no evidence or contention that Union Electric advised the manner or means by which Davey performed the work. The injured employee brought suit and Union Electric requested Pacific Indemnity to defend pursuant to the contract. Pacific refused the request on the ground that the policy did not provide coverage of the factual situation forming the basis for the action. Union Electric ultimately settled the suit and brought action to recover Pacific's pro rata share of the settlement under the policy. The St. Louis Court of Appeals held that the exclusion (identical with exclusion (e) of Western's contract) did not apply because Union Electric did "generally supervise" the operations performed by the independent contractor. The St. Louis Court of Appeals said, as the district court did here, that since the words "general supervision" are not defined in the policy as used in connection with the operations of an independent contractor, the provisions must be construed liberally and most favorably in favor of the insured. The court held that "general supervision" as used in the policy did not mean the supervision of the method, manner and/or means employed by the independent contractor, but rather means supervision to the extent necessary to see that the work was done in accordance with the contract and specifications and to provide the location where the independent contractor was to perform its work. Inasmuch as Union Electric had directed Davey to work in this particular location where Union Electric knew the uninsulated wire was located, a supervisory function, the court found that the policy covered the injury of Davey's employee.

In the instant case, Bell maintained "general supervision" of Missouri Conduit's work by supplying the specifications and plats of the work to be done. The contract between Bell and Missouri Conduit reserved for Bell the right of inspection of the work to see that the specifications were being followed. The specifications furnished by Bell to Missouri Conduit called for the manhole to be enlarged in such a manner that Missouri Conduit's employees would come into contact with the energized cable which was not revealed by the plans and specifications Bell furnished Missouri Conduit, even though the evidence shows Bell had knowledge of its existence. We, therefore, hold that Missouri Conduit's injured employees fell within the coverage of the policy issued to Bell, and their complaints adequately alleged negligence covered by the policy inasmuch as Bell's failure to warn the injured employees arose out of a supervisory function which in fact was the only connection Bell had with the work. It is quite apparent from the contract between Bell and Missouri Conduit that it was Bell's intention to secure adequate insurance to save Bell harmless from any occurrence that might occur as the contract required the furnishing of the owner's protective liability policy from the same

[1]. See Stoner v. New York Life Ins. Co., 311 U.S. 464, 467, 61 S.Ct. 336, 85 L.Ed. 284 (1940).

company with which the contractor carried its comprehensive general liability insurance.[2]

■■ Western next contends that the district court erred by ordering Western to reimburse Bell for any settlement or judgment up to the policy limits and ordering "that Bell be held free from any complaint by Western that such suits or settlements were improperly conducted or resolved." Western contends that it must pay Bell even if Bell handles or settles the cases in bad faith or acts in collusion with the plaintiffs. Under Missouri law, Western is obligated to reimburse Bell for the judgments or settlements absent collusion or bad faith. Landie v. Century Indem. Co., 390 S.W. 2d 558 (Mo.App.1965); Freese v. St. Paul Mercury Indem. Co., 252 S.W.2d 653 (Mo.App.1952); Bituminous Cas. Corp. v. Walsh & Wells, Inc., 170 S.W.2d 117 (Mo.App.1943); 49 A.L.R.2d 694 at 711 (1956). Upon reading the judgment of the court in conjunction with the memorandum opinion filed by the court, it is readily apparent that the district court implied that the suits be conducted in good faith and without collusion and in accordance with Missouri law. The insurer has a right to expect and demand that Bell act in accordance with the law, and certainly the judgment of the court did not deny Western this right.

Viewing the court's judgment and opinion in context, it is clear that the court ordered that Western could not complain about the actual manner and procedures Bell's attorneys used to defend or settle the lawsuits so long as Bell was acting in good faith. When Western chose not to defend, Bell had the right, in good faith, to make the best settlement it could, and in such a case Bell had a free

hand to proceed as soon as practical in its own way. Bituminous Cas. Corp. v. Walsh & Wells, Inc., supra. Therefore, the district court correctly ruled that Western could not complain of the manner and procedure Bell may follow in defending the suits.

Finally, Western contends that the district court erred in ordering Western to reimburse Bell for all costs, expenses and attorneys' fees incurred as a result of being forced to press this action for a declaration of rights in order to obtain performance of its insurance contract with Western. The district court based the award on § 375.420 V.A.M.S. which states:

"375.420. Damages in addition to claim

"In any action against any insurance company to recover the amount of any loss under a policy of fire, cyclone, lightning, life, health, accident, employers' liability, burglary, theft, embezzlement, fidelity, indemnity, marine or other insurance, if it appear from the evidence that such company has vexatiously refused to pay such loss, the court or jury may, in addition to the amount thereof and interest, allow the plaintiff damages not to exceed ten per cent on the amount of the loss and a reasonable attorney's fee; and the court shall enter judgment for the aggregate sum found in the verdict."

Western raises three grounds for reversal: (1) that Bell did not plead or in any way assert any such right under the Missouri Vexatious Delay Statute; (2) that the provisions of § 375.420 V.A. M.S. do not apply to a declaratory judgment action; and (3) that the case presents open questions of law and issues of fact, asserted in good faith by West-

---

**2.** The contract between Bell and Missouri Conduit contained the following provision:

   "25. *Insurance:* * * * The Contractor shall also obtain at his expense an Owner's Protective Liability Insurance policy, naming the Telephone Company as insured, with the same insurance company with which the Contractor carries his Comprehensive General Liability Insurance and Automobile Liability Insurance. * * *

   "Such policies shall be approved by the Telephone Company before the Contractor commences work."

ern, and under such circumstances no expenses or attorneys' fees for vexatious delay are allowable.

We agree that the district court erred in allowing reasonable attorneys' fees because they were not pleaded or otherwise asserted. The recovery of attorneys' fees by the successful litigant is not a matter of right which follows automatically from and because of the fact that justice of his claim has been established; attorneys' fees are recoverable when and only when they are provided for by the statute. The statute is penal and must be strictly construed. Cass v. Pacific Fire Ins. Co., 224 S.W.2d 405 (Mo.1949). Claims for attorneys' fees are also items of special damage which must be specifically pleaded under Fed.R.Civ.P. 9(g). Hawkeye-Security Ins. Co. v. Davis, 277 F.2d 765 (8th Cir. 1960);[3] American Sur. Co. of New York v. Franciscus, 127 F.2d 810 (8th Cir. 1942); Fay v. Aetna Life Ins. Co., 268 Mo. 373, 187 S.W. 861 (1916). The complaint in the instant case does not allege vexatious delay. There are no allegations in the complaint or assertions by Bell showing that Bell is entitled to damages for such delay and for attorneys' fees. Accordingly, there is no support in the pleadings for the allowance, and the judgment of the district court must be modified by striking this provision from its judgment.

The judgment of the district court will be modified by striking therefrom the provisions for allowance of attorneys' fees in the instant case, and as modified the judgment will be affirmed.

---

3. We think this point is controlled by our holding in Hawkeye-Security Ins. Co. v. Davis, 277 F.2d 765, 771–772, where we said:

> "[Davis] did not ask for attorney's fees in the trial court. They did not plead or in any other manner assert any such right under the Missouri Vexatious Delay Statute. V.A.M.S. § 375.420. Claims for attorney's fees or other damages for vexatious delay must be supported by appropriate pleadings and proof. (Citing cases.)
> "In any event, we are satisfied that this case presents a substantial legal issue asserted in good faith and under such circumstances no attorney's fees for vexatious delay are allowable. (Citing cases.)

> "Moreover, the Missouri Vexatious Delay Statute is inapplicable to declaratory judgment actions such as this one brought by an insurance carrier. (Citing cases.)
> "It is clear that the Missouri Vexatious Delay Statute affords defendants no basis for allowance of attorney's fees.
> "We are satisfied that no legal basis exists for the allowance of attorney's fees to defendants in this case. This appeal was taken in good faith and involves a substantial and doubtful legal question. Under such circumstances defendants are entitled to no damages under our rule 21(b) 28 U.S.C.A."