*See* Restatement, Conflict of Laws § 134, comment (b) (1934).[12]

For the reasons stated the Decree of the District Court will be affirmed.

Jerry V. CARTER, Appellant,

v.

AETNA CASUALTY AND SURETY COM-
PANY, Appellee,

A. C. WOODS, Third-Party Defend-
ant.

No. 72–1338.

United States Court of Appeals,
Eighth Circuit.

Submitted Oct. 18, 1972.

Decided Feb. 16, 1973.

12. Restatement, Conflict of Laws § 134, comment (b) states:

"The mere fact that the foreign marriage would have been contrary to the statute of the forum had it occurred within the state, does not make it so offensive to local policy as to be refused enforcement."

Maurice Cathey, Paragould, Ark., for appellant.

G. D. Walker, Jonesboro, Ark., for appellee.

Before LARAMORE, U. S. Court of Claims Senior Judge,* BRIGHT and ROSS, Circuit Judges.

BRIGHT, Circuit Judge.

Appellant Jerry V. Carter sustained severe bodily injuries in a two car collision occurring June 30, 1966, on a public highway in the State of Missouri. At that time a person we shall call Mary

* Sitting by designation.

Margaret [1] drove a 1961 Chevrolet across the center line of the highway and into a stationwagon driven by Carter. Carter later brought suit in a state court of Missouri against Mary Margaret and recovered a judgment by default in the sum of $61,000. Thereafter he brought the present action in the United States District Court against Aetna Casualty & Surety Co. (Aetna), claiming that a garageman's liability policy issued to A. C. Woods d/b/a Woods Equipment Co., of Corning, Arkansas, afforded coverage to Mary Margaret for an amount in excess of this judgment. He alleged that Mary Margaret was an additional insured under the policy, since she was driving an automobile owned by the named insured, A. C. Woods, with his permission.[2] Aetna defended this action on the ground that Mary Margaret had purchased the automobile from Woods,[3] or in the alternative that Mary Margaret's breach of policy provisions and her collusive conduct with Carter in the Missouri lawsuit insulated Aetna from any liability under the policy.

■ The district court submitted only the issue of ownership to a jury and its verdict determined Woods to have been the owner of the 1961 Chevrolet at the time of the accident in question.[4] The district court thereafter ruled favorably to Aetna on its policy defenses and ordered Carter's action dismissed. Carter brings this appeal from the judgment of dismissal. We vacate the judgment and remand this cause to the district court for further proceedings.

■ Although a jury heard this case, the trial court in effect followed procedures under Rule 49(a) Fed.R.Civ.P. by making additional findings on issues which were not submitted to the jury. Thus, the jury determination amounted to a special verdict only on the issue of ownership. Neither party demanded that the trial court submit the remaining issues to the jury before the jury retired. Therefore, the subsequent fact-findings of the court will be reviewed under the clearly erroneous standard of Rule 52(a), Fed.R.Civ.P.

We turn to the rather unusual facts in this case. Although the ownership of the vehicle was hotly contested, we adopt the version presented by Carter as consistent with the jury's verdict. The testimony indicated that Mary Margaret and Woods had been involved in a meretricious relationship from the time the automobile had been furnished to Mary Margaret (approximately a month before the accident) up to and including the day that the accident with Carter actually occurred. Mary Margaret and Woods would often meet at places distant from the residences of each to carry on their illicit relationship. Mary Margaret had no means of transportation during the one-month period in question other than Woods' automobile.

Following the accident, Woods prepared documents showing that his sales

---

1. In light of circumstances disclosed in the opinion, we deem it best not to use this witness' proper name.

2. The Aetna policy here in question defines an insured as follows:

 III. Definition of Insured
 The unqualified word 'Insured' includes the named Insured and also includes under Coverage(s) A [bodily injury liability—automobile] any person while using an owned automobile . . . provided the actual use of the automobile is by the named insured or with his permission. . . .

3. A policy endorsement specifies that a transferee of a vehicle under an agree-

ment of sale does not qualify as an insured.

 None of the following is an insured:
 . . . (iii) any person or organization other than the named Insured with respect to any automobile (a) owned by such person or organization or by a member (other than the named Insured) of the same household, or (b) possession of which has been transferred to another by the named Insured pursuant to an agreement of sale.

4. Aetna argues that the trial court should have entered a directed verdict in its favor on the ownership issue. Since there was substantial evidence to support the verdict, we will not disturb the jury findings.

agency, Woods Equipment Company, had sold the vehicle to Mary Margaret on May 3, 1966. According to Mary Margaret, Woods prepared these documents "so it would cause no trouble to either side [his wife or her husband]."

An adjuster for the insurance carrier affording collision insurance on Carter's vehicle and Workmen's Compensation coverage for Carter's employer made inquiry of Woods concerning his insurance. Woods advised the adjuster that he had reported the accident to his insurer, when no report had in fact been made.

Carter named Mary Margaret and Woods as defendants in the Missouri lawsuit, alleging in part that Woods owned the vehicle driven by Mary Margaret and that she operated the vehicle as his agent. At this time Mary Margaret did not know of the name of Woods' insurance carrier. Upon receipt of the suit papers she turned them over to Woods. An identical summons and complaint were transmitted by Woods to his local insurance agent, and thereafter forwarded by the agent to Aetna in late June, 1968, together with an accident report containing the following details:

> Insured sold 1961 car to Mary Margaret * * * on May 3, 1966. On June 30 [she] had an accident with a vehicle driven by Jerry V. Carter. Complaint alleges Woods was owner or [Mary Margaret] was agent of insured. Insured has no connection with party to this suit.

In due course a local Missouri attorney, Manuel Drumm, acting on instructions from Aetna, filed an answer on behalf of defendant-Woods only. This attorney recognized that the complaint contained allegations bringing Mary Margaret within the coverage of the policy. The file forwarded to him also contained Mary Margaret's address, but little else.

Drumm requested that Aetna make sure that Woods did not own the vehicle. Aetna responded by sending the attorney further documentation of the sale. Neither Aetna nor the attorney investigated further by inquiring of the facts from Mary Margaret.

During the pendency of this Missouri suit, Carter's attorney, George Wilhoit of Poplar Bluff, Missouri, inquired whether Drumm would file an answer to the complaint on behalf of Mary Margaret. On this occasion Wilhoit advised Drumm that Mary Margaret had been dating Mr. Woods and that he understood that Woods owned the car in question.

On September 25, 1968, Wilhoit abruptly dismissed the lawsuit against Woods. Wilhoit, in his testimony in this trial, stated that he could not show any agency relationship between Mary Margaret and Woods in order to hold Woods in the lawsuit. The dismissal resulted in the cancellation of a proposed deposition of Mary Margaret. Carter's attorney wrote to Drumm to advise him of the dismissal of the suit against Woods, and somewhat facetiously extended congratulations for winning a case so easily.

Although he recognized Mary Margaret to be judgment-proof, Wilhoit, preceding the default hearing, prepared an agreement under which Carter agreed to collect any judgment from insurance carriers, but not from Mary Margaret.[5] Soon thereafter, on September 30, 1968, Carter submitted proof of damages in the action to the Missouri State Court, which made an award of $61,000 in his favor. In late June, 1969, Carter brought this suit to collect the judgment from Aetna.

In determining that Aetna sustained no liability for the judgment, the district

---

5. Mo.Rev.Stat. § 537.065 (Supp.1972) V.A.M.S., expressly authorizes a contract between a claimant and a tort-feasor whereby the claimant agrees either to look only to specific assets of the tort-feasor, or to look only to the insurer of the tort-feasor, for satisfaction of the damages to the claimant.

court drew four conclusions from the evidence:

(1) That Aetna made a reasonable and diligent investigation into the ownership of the car.

(2) That Mary Margaret failed to give adequate notice of the claim to Aetna.

(3) That Mary Margaret was guilty of collusion with a party who was acting adversely to Aetna's interest, and therefore breached the cooperation clause of the policy, thus relieving the company from affording her coverage.

(4) That Carter is estopped to recover under the policy because of the conduct of his attorney, whose actions prevented Aetna from receiving effective notice of the basis of the claim against Mary Margaret.

## I.

## THE REASONABLENESS OF THE INSURER'S IN-VESTIGATION

The complaint in the Missouri suit alleged that Woods owned the automobile involved in the accident, and that Mary Margaret was operating the vehicle as Woods' agent. Manuel Drumm, Aetna's local attorney, testified to his recognition that these allegations brought Mary Margaret squarely within the definition of an additional insured under the Aetna policy. Moreover, he acknowledged that these allegations obligated Aetna to respond to the suit on behalf of Mary Margaret regardless of the falsity of such allegations. Aetna's adjuster gave similar testimony. Drumm also advised Aetna that it might owe Mary Margaret a defense. Drumm testified further that counsel for an insurance carrier was not justifiably entitled to rely solely upon an insured's statement of the facts. Aetna's adjuster also acknowledged that an adjuster does not rely exclusively on the in-

sured's summary of important incidents. But neither man contacted Mary Margaret or carried out an independent investigation.

Here, the record shows that Aetna needed only to interview Mary Margaret to learn of the dispute as to ownership of the 1961 Chevrolet. Instead the company followed an ostrich-like philosophy of keeping its head buried in the sand until the institution of this lawsuit, when it was forced to become aware of potential liability under its policy. Aetna then defended this case by arguing that others took advantage of it when it had no knowledge of the true situation. We think it essential that an insurer, when notified of the existence of a claim against an insured as well as against an additional insured, must make a reasonable investigation of the facts.

The district court held that Aetna was relieved from liability under the policy because Aetna had made a reasonable investigation. On the testimony summarized above, we find this determination to be clear error.

■■ Arkansas law [6] recognizes that there is an obligation of an insurer to defend a lawsuit brought against its insured, if the cause of action is within the coverage of the policy. This obligation is broader than the insurer's obligation to pay the judgment, and is determined by the allegations of the complaint against the insured, regardless of the falsity of any of these allegations. Equity Mutual Insurance Co. v. Southern Ice Co., 232 Ark. 41, 334 S.W.2d 688 (1960). Aetna, therefore, breached its contract, by failing to meet its obligation to defend Mary Margaret, since the complaint against her alleged a factual setting coming within the coverage of Aetna's policy. See Equity Mutual, supra, at 693; Home Indemnity Co. v. Snowden, 223 Ark. 64, 264 S.W.2d 642, 645–646 (1954).

---

6. Appellee argues that Arkansas law applies in determining the duties of the parties arising from the Insurance contract. We assume, arguendo, the validity of the appellee's position. However, Arkansas law may not necessarily apply to duties and obligations arising out of the relationship of the parties to the Missouri lawsuit.

·Accordingly, we hold that the undisputed testimony of Aetna's own witnesses established its failure to perform an adequate · investigation, which failure caused Aetna to breach its obligation to defend its insured.

## II.

## BREACH OF THE NOTICE PROVISIONS

We turn to Aetna's defense that Mary Margaret failed to give Aetna notice in pursuance of the policy provisions.[7] Although recognizing that Mary Margaret initially did not know the identity of Woods' insurer, the trial court reasoned that the policy required Mary Margaret to notify the company as soon as she learned of its name, i. e., on September 30, 1968, when she signed the agreement with Carter absolving her from personal liability. The record indicates that Mary Margaret was an unsophisticated and ill-educated woman.[8] No evidence was introduced to establish that she would know how or where to contact the Aetna Casualty & Surety Co., except through her paramour, Woods. The record indicates that the insurer had earlier received actual notice of the Missouri suit. Such notice through Woods satisfies the policy requirements. *See* Kealy v. Lumbermen's Mutual Ins. Co. of Mansfield, Ohio, 239 Ark. 766, 394 S.W.2d 629 (1965); Southern Farm Bureau Casualty Ins. Co. v. Robinson, 236 Ark. 268, 365 S.W.2d 454 (1963); Halferty v. National Mutual Casualty Co., 296 S.W.2d 130 (Mo.Ct.App.1956).

There is an alternative basis for rejecting this contention. An insurer which refuses to defend a suit within the policy breaches its contract with an insured. *Home Indemnity, supra,* 264 S.W.2d 642, 645–646. Since a wrongful refusal to defend breaches the contract, the insured's duties do not arise because of the failure of the insurer to perform a contractual duty precedent or concurrent. St. Louis Dressed Beef & Provision Co. v. Maryland Casualty Co., 201 U.S. 173, 181, 26 S.Ct. 400, 50 L.Ed. 712 (1906); *see* Western Casualty and Surety Co. v. Southwestern Bell Tel. Co., 396 F.2d 351, 355 (8th Cir. 1968); 8 Appleman, Insurance Law and Practice, § 4786; Annot., 49 A.L.R.2d 694, 755 (1956).

Finally, as we have already noted, Aetna's failure to discover its potential liability for Mary Margaret's conduct rested upon its own negligent failure either to investigate the accident or to answer the complaint as it was bound to do. Under these circumstances, we find no basis for denying coverage on the theory that Mary Margaret was obligated to seek out the insurer and notify it of a pending judgment by default. The notice provisions require no such action. *See* note 7, *supra*.

## III.

## BREACH OF THE COOPERATION PROVISION

The trial court made the following specific finding as a basis for its determination that Mary Margaret

---

7. The notice provisions of the policy read:
 7. Notice of Accident—When an accident occurs written notice shall be given by or on behalf of the Insured to the Company or any of its authorized agents as soon as practicable. Such notice shall contain particulars sufficient to identify the Insured and also reasonably obtainable information respecting the time, place and circumstances of the accident, the names and addresses of the injured and of available witnesses.
 8. Notice of Claim or Suit—If claim is made or suit is brought against the Insured, the Insured shall immediately forward to the Company every demand, notice, summons or other process received by him or his representative.

8. Mary Margaret testified that she "cannot read too well," and that the September 30th agreement was read to her. She testified further that she did not remember the name of Woods' insurer on the agreement which she signed. According to her testimony, she first learned that Aetna was Woods' insurer during the trial of the present action.

breached the cooperation clause[9] of the policy:

> The insured's conduct here in failing to notify Aetna, in entering the agreement and in participating in the default proceedings in cooperation with plaintiff's counsel amounts, under all the facts and circumstances, to such non-cooperation with the insurer that coverage must be forfeited. [Mary Margaret] knew that the agreement between her and Carter would let her "off the hook", to use her own phrase, and allow Carter to pursue Aetna directly. The Court concludes that her conduct eliminates any duty on the part of Aetna to defend her or pay the judgment against her.

For reasons already discussed under the notice provisions of the policy, we deem the foregoing analysis faulty. *See,* Annot., 49 A.L.R.2d 694, 759 (1956). The insurer breached its contract by ignoring Mary Margaret's interest as a defendant in the lawsuit. Mary Margaret remained free to protect her own interests. Her near-indigent status precluded her from hiring an attorney. She did not answer the complaint. She permitted the cause to go to judgment with the understanding that no effort would be made to collect against her. This she was entitled to do. *See* Western Casualty and Surety Co. v. Herman, 405 F.2d 121, 124 (8th Cir. 1968); Home Indemnity Co. v. Snowden, 223 Ark. 64, 264 S.W.2d 642, 645–646 (1954); Damron v. Sledge, 105 Ariz. 151, 460 P.2d 997, 999 (1969).

To assume a duty on the part of Mary Margaret to consult with an insurer who had never communicated with her would seem to fly in the face of reality. The insurer must use reasonable diligence in obtaining cooperation from the insured before it may allege a breach of the cooperation clause as a defense to its liability under the policy. *See* Iowa Home Mutual Casualty Co. v. Fulkerson, 255 F.2d 242, 244–245 (10th Cir. 1958); Montgomery v. Preferred Risk Mutual Ins. Co., 17 Utah 2d 333, 411 P.2d 488, 490 (1966); Ford v. Providence Washington Ins. Co., 151 Cal.App.2d 431, 311 P.2d 930, 935 (1957). The circumstances of this case demonstrate no violation of the cooperation clause of the policy.

## IV.

### ESTOPPEL OF CARTER

As a separate ground for denying plaintiff any recovery, the court held Carter estopped by the conduct of his attorney in:

> * * * deliberately trying to ensure that Aetna did not become aware of its potential liability as they [Mary Margaret, Carter, and Carter's attorney] proceeded on their way to the judgment in Missouri: in dismissing Woods from the suit; in cancelling the scheduled depositions; in obtaining the cooperation of [Mary Margaret]; in procuring the agreement; in excluding [Mary Margaret] from the courtroom while Carter was testifying as to her liability for his injuries; in eliciting her testimony on issues wholly irrelevant to that lawsuit (but very relevant to the issues in this federal action); and in all the while failing to inform any Aetna representative of the factual basis for the theory of liability Carter intended to urge in this suit.

We think the evidence permits the inference that Carter's attorney dismissed the suit against Woods so that Aetna's local attorney would not learn from a deposi-

9. The cooperation clause reads:
 9. Assistance and Cooperation of the Insured—The Insured shall cooperate with the Company and, upon the Company's request, shall attend hearings and trials and shall assist in effecting settlements, securing and giving evidence, obtaining the attendance of witnesses and in the conduct of suits. The Insured shall not, except at his own cost, voluntarily make any payment, assume any obligation or incur any expense other than for such immediate medical and surgical relief to others as shall be imperative at the time of accident.

tion that Mary Margaret disputed Woods' assertion that Woods had sold the automobile to her.

 Yet this factor does not give rise to an estoppel. A party cannot claim an estoppel as to facts which the person asserting the estoppel ought in the exercise of reasonable prudence to know. Kenneally v. First National Bank of Anoka, 400 F.2d 838, 843 (8th Cir. 1968), cert. denied, 393 U.S. 1063, 89 S.Ct. 716, 21 L.Ed.2d 706 (1969). See 31 C.J.S. Estoppel § 71, pp. 434–435 (1964). Here the facts quite clearly establish that Aetna learned from the complaint that Carter claimed Woods owned the car which collided with him. Carter's attorney had alerted Aetna's attorney that there was a "girl-friend type relationship" between Woods and Mary Margaret. Aetna's own lack of diligence prevented it from learning of Mary Margaret's version of the transaction by which she received the vehicle. Moreover, to the extent that the estoppel argument incorporates a charge of collusion, we would reject such a contention. Collusion imports a secret agreement and cooperation for a fraudulent purpose. See 15 C.J.S. Collusion, p. 348 (1967). Aetna makes no showing of false or deceitful testimony underlying the entry of judgment in this case.[10]

## V.

## DISPOSITION

 Although we reverse the trial court, we believe a remand appropriate here. We characterize the agreement which provided for a consent to a default judgment as a settlement agreement. Once an insurer breaches its contract by refusing to defend an action against its insured, it takes the risk that the insured will have a judgment entered

against him, or will accept a settlement with the injured party. The insurer is liable on its refusal to defend, and must pay the amount of the judgment or settlement, at least up to the policy limits, absent collusion or bad faith by the insured. See Western Casualty & Surety Co. v. Southwestern Bell Tel. Co., 396 F.2d 351, 355 (8th Cir. 1968); Landie v. Century Indemnity Co., 390 S.W.2d 558, 562 (Mo.Ct.App.1965); Home Indemnity Co. v. Snowden, 223 Ark. 64, 264 S.W.2d 642, 645–646 (1954); 7A Appleman, supra, § 4686, p. 473; Annot., 49 A.L.R.2d 694, 717–718. Arkansas law does not bind the insurer unless the amount of the settlement paid by the insured is reasonable. Home Indemnity, supra, 264 S.W.2d 642. We think a similar rule should apply here, even though Mary Margaret does not need to respond personally to the settlement award. We recognize that Aetna did not raise the issue of reasonableness in the trial of this case, perhaps to avoid eroding their defense of noncoverage through Woods' alleged sale of the vehicle, and ordinarily would now be barred from litigating that issue. But, considering the sharp practices of Carter's attorney in the Missouri lawsuit, we should, in the interest of justice, permit Aetna to raise the issue of reasonableness of the settlement on remand if it desires to do so. The nature and extent of Carter's injuries, damages, and losses may then be considered by the court, or by a jury if either party so demands. If Aetna shows the settlement award to be excessive in amount, it shall be obligated to pay for that part thereof deemed reasonable.

We add a comment that might be pertinent in light of the facts adduced in this case. Mary Margaret deserved better treatment than she received at the

10. Appellee in its brief concedes:
Carter had genuine injuries and a strong case of liability, and, by the simple expedient of placing Aetna directly on notice of the facts alleged by [Mary Margaret], the attorneys might have placed Aetna in a position where it

could not have relied on any of the defenses now claimed. Upon the facts offered in evidence, they might readily have sustained a substantial judgment against [Mary Margaret] in the face of any defense which might have been offered.

hands of the insurer. Here Aetna paid no heed to the rights of Mary Margaret. An insurer owes its insureds as well as the public an obligation to provide speedy, efficient, and proper claims service.

Neither do we approve of the conduct of Carter's Missouri attorney who dismissed the case against Woods to insure that Aetna would not interfere with his obtaining a default judgment against Mary Margaret. He was entitled to take judgment by default under the circumstances. Nevertheless, practices of this kind by which a unilateral settlement may be forced upon an unsuspecting insurance carrier suggest sharp dealing, and would seem to raise a question of ethical propriety.

The conduct of Carter's lawyer does not, however, rise to the level of a policy defense, in light of Aetna's prior neglect of its additional insured. Aetna ought not to be relieved of paying Carter reasonable compensation for the injuries he sustained at the hands of Mary Margaret who was in fact insured by Aetna.

Reversed and remanded for further proceedings in conformity with this opinion.